(No. 26579.—

The People of the State of Illinois, Defendant in Error, *v.* Gorman W. Chronister, Plaintiff in Error.

*Opinion filed May 13, 1942.*

WILL P. WELKER, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, (JOSEPH B. SCHLARMAN, State's Attorney, of counsel,) for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

Gorman W. Chronister, alias G. W. Wilson, was indicted in the circuit court of Clinton county for the crime of confidence game, and for uttering a false, forged and counterfeit check; was tried before a jury and found guilty of both charges and sentenced to the penitentiary. He prosecutes a writ of error to this court.

The proof upon the part of the People tended to show the plaintiff in error (hereinafter called defendant) came to the A. G. Rabus Grocery & Meat Market in Carlyle, Illinois, on July 30, 1940, and requested Evelyn Hardy, a clerk and also a daughter of the owner, to cash a check for $74.25. She was alone in the store at the time. The check purported to be payable to G. W. Wilson and issued by the Standard Oil Company of Louisiana. She refused to cash the check, whereupon the defendant purchased a carton of cigarettes, and the check was tendered and accepted in payment, and the difference of $73 given to him in cash. Before accepting the check Mrs. Hardy requested that it be endorsed, and the individual there present signed on the back the name of G. W. Wilson. The check was bogus and forged. About three weeks later Mrs. Hardy learned there was a man by the name of G. W. Wilson in jail in Vandalia, charged with passing bad checks, and she thereupon called upon the sheriff of Fayette county, and told him of the manner in which she had been swindled. There were nine prisoners confined in the jail, including the defendant, and the sheriff called them out and lined them up, and Mrs. Hardy, for the purpose of ascertaining whether any one of them was the person who gave her the

bogus check, walked down the line and back without saying anything, after which the sheriff, according to Mrs. Hardy, said: "Maybe you will know them better if you hear his voice;" or, according to a deputy present: "Maybe you can do better if you hear their names, or hear them say their names." After the statement by the sheriff Mrs. Hardy identified the defendant as the person who had presented the check to her. When taken into the sheriff's office defendant positively denied ever having met Mrs. Hardy, or having been in her store. Upon the trial the identification was more positive, and a description of the defendant given, although his being present in court before her rendered this less conclusive. The record does not show she gave a description of the defendant before the date of the trial, and she admitted upon cross-examination the possibility of being mistaken.

The defendant went upon the witness stand and denied he was ever present in the Rabus store, or ever had any transaction with Mrs. Hardy, or ever had possession of the bogus check, and claimed that at the time of the crime, viz., July 30, 1940, he was from July 29 to August 9, 1940, living in a hotel in Kansas City, Missouri. In this he is supported by the owner of the hotel and by the desk clerk. The registration card with his signature was produced in court, and also the ledger showing payment of his bill on August 9. Both of these witnesses gave adequate reasons for their certainty of identification, so there can be little doubt but that either Mrs. Hardy or the hotel people are mistaken.

As a part of the People's case the court also permitted a witness by the name of Metzger to testify that during the month of August (date not specified) the defendant came to his place of business and bought some whisky and gave him a check, which came back marked bogus. He was, however, very uncertain of identification. Bernhardt,

another witness, testified on August 8 the defendant gave him a check for a purchase, but no proof appears as to whether the check was good or bad.

Although numerous errors are assigned it is necessary to consider only two,—first, giving the People's instruction No. 7, and second, the admissibility of the testimony of Metzger and Bernhardt concerning transactions occurring after the date of the alleged crime without any proof of similar transactions prior to the date of the crime.

The People's instruction No. 7 reads: "The court instructs the jury that the intent with which an act is committed, being but a mental state of the accused, is not required to be established by direct proof, but the same may be established by all of the facts and circumstances attending the doing of the act complained of as disclosed by the evidence. If you find from the evidence beyond a reasonable doubt that the defendant did pass a bogus check, in manner and form as charged in the indictment herein, the intent with which the said defendant passed the bogus check in question, must be determined by you from all the evidence in the case. And if you believe, beyond a reasonable doubt, from the evidence in this cause that the defendant did, within the county of Clinton, pass a bogus check as charged in the indictment, then the intent to defraud will be presumed." The objection to this instruction made by defendant is that all it requires to establish the crime is proof of the passing of the check, and from that the intent to defraud would be presumed.

It is also argued that this objection is equally applicable to both the crime of uttering and that of confidence game charged in the indictment. Section 107 of division 1 of the Criminal Code makes it a felony to pass, make, utter or publish, with intent to defraud, any fictitious bill, note or check, with this additional element—"the said person, knowing the said bill, note, check or instrument of writing for the payment of money or property to be fictitious."

This element is entirely omitted from the instruction. There is no instruction given by the People embodying this element, and in fact the People's first instruction giving a definition of forgery by uttering also omitted the requirement of knowledge of the fictitious character of the instruments required by section 105, to constitute such crime. Ill. Rev. Stat. 1941, chap. 38, par. 277.

It is established that forgery and having possession of a forged instrument with intent to pass the same are distinct felonies. (*Parker* v. *People,* 97 Ill. 32; *People* v. *Vammar,* 320 id. 287.) In the latter case the court said: "To warrant a conviction under the indictment in the present case it was necessary that the prosecution should prove by competent evidence, beyond a reasonable doubt, not only that the check in question was forged, but that plaintiff in error, knowing the same to be forged, passed the same with intent to prejudice, damage and defraud."

The instruction directly stated that if the defendant passed a bogus check, as charged in the indictment, the intent to defraud would be presumed. It is readily apparent a person might have in his possession a bogus or fictitious check and there could be no intent to defraud, unless he had knowledge of its fictitious character. This instruction had the effect of directing the jury that the possession, alone, would raise the fraudulent intent. The giving of this instruction was error, because, as we have said many times, where there is an erroneous instruction the giving of a correct instruction on behalf of the defendant will not cure the error, for the obvious reason there is no way of telling which instruction the jury followed. *People* v. *Allen,* 378 Ill. 164; *People* v. *Bradley,* 324 id. 294; *People* v. *True,* 314 id. 89; *People* v. *Casino,* 295 id. 204.

There is a further objection by the defendant in error to the instruction in that it applied to both the charges contained in the indictment. If a person innocently has in his possession a fictitious check the crime of confidence

game is not committed unless the defendant in some manner obtains the confidence of the victim. In *People* v. *Peers,* 307 Ill. 539, it was held, and authorities cited to sustain the proposition, that a swindling operation does not constitute the confidence game unless the element of confidence is present, and that it is not enough to show the obtaining of money by false pretenses.

According to the complaining witness in the instant case there was no statement of any kind made to her with reference to the check; she refused to voluntarily cash it for the purpose of making change, but when a purchase was made she readily accepted the check without any representations, other than the requirement to have it properly endorsed. There is here no evidence of any scheme by which the confidence of Mrs. Hardy was obtained, and she readily admitted she was willing to cash the check for a purchase, but did not care to cash a check merely for accommodation.

The instruction as applied to confidence game supplied the felonious intent necessary to confidence game by mere possession of the bogus check. Upon this theory of the law any person, however innocent, who had in his possession a check which was worthless, but not so known to him, would become guilty of a felony upon tendering it in exchange of payment for goods. The giving of this instruction was error.

The court also permitted the testimony of the witnesses above mentioned relating to the giving of checks by the defendant after July 30th, the date of the alleged crime. The competency of such evidence in general was thoroughly analyzed by this court in *People* v. *Hobbs,* 297 Ill. 399, where it was said that as a general rule evidence of a subsequent crime without proof of crimes of a like character previous to the offense is not admissible in evidence. The only theory upon which similar offenses are permitted to be proved in cases of this kind is that it tends to show guilty knowledge, as well as a criminal intent before the

criminal act, but that proof of offenses subsequent to the alleged crime is contrary to the presumption of innocence, and cannot establish a guilty intent on a prior occasion, in the absence of proof that a defendant had formerly committed a criminal offense. The *Hobbs case* was followed in *People* v. *Moshiek*, 323 Ill. 11, and applied in a forgery transaction. The court said: "This court in the case of *People* v. *Hobbs*, 297 Ill. 399, has definitely and finally settled the question that the evidence of the commission of subsequent crimes is not admissible for the purpose of proving guilty knowledge or intent in the absence of proof that the defendant has formerly committed a similar offense, and that his first offense must be held to be the beginning of his criminal career, and that his intent in the commission of his first offense may not be presumed from his commission of subsequent similar and distinct offenses." What has been said with respect to the errors above has been upon the assumption that there was some proof tending to show that the defendant was the person who passed the bogus check. As pointed out above this is totally denied by the defendant, and he seems to be supported by substantial evidence.

Inasmuch as the case must be retried we are not passing or commenting upon the facts other than to say, the evidence disclosed in the record being close, it is necessary that the jury be accurately instructed, and that incompetent evidence be excluded. There were other instructions given for the People, which have been criticized by this court, but as they will doubtless be corrected upon new trial we deem it unnecessary to comment upon them here.

The judgment of the circuit court of Clinton county is reversed and the cause remanded for a new trial.

*Reversed and remanded.*