(No. 37755.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN EDMUNDS, Plaintiff in Error.

*Opinion filed March 18, 1964.—Rehearing denied May 19, 1964.*

Ira I. Silbar, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Hershey delivered the opinion of the court:

The defendant, John Edmunds, was convicted by a jury of the criminal court of Cook County for the crime of rape and was sentenced to the penitentiary for a term of not less than 50 years nor more than 50 years and one day.

At the trial the State adduced the testimony of Mrs. Helen Olson, the complainant, Leroy Rees, her roomer, and police officers Makley, Rafalski and Sykes. Their testimony disclosed that the following occurred.

Prior to 1:00 A.M. on March 10, 1962, Mrs. Olson, a 71-year-old widow, and Rees, her 69-year-old roomer, returned to their home at 643 West Weed Street from a tavern where they had consumed two or three beers. Mrs. Olson and Rees testified that as they were entering the house Willie Lee Graves and the defendant appeared from behind and forced their way into the inner vestibule. Rees tried in vain to strike Graves with a nearby iron rod, and was slugged in the eye by Graves. Rees then ran into a rear bedroom, climbed through a trap-door into the basement, and then ran outside in order to obtain police assistance.

After Edmunds entered the house Mrs. Olson testified that he forced her to lie down on a couch in the front room with a knife against her throat. Then both he and Graves forcibly engaged in sexual intercourse with her, the defendant doing so twice. Later Mrs. Olson's purse was sliced open with a knife. About this time Rees returned, and both Edmunds and Graves apparently observed that there were policemen with him as they shouted "police, police," and hurried into the kitchen and out the back door. Mrs. Olson thereupon ran to the front door.

Rees, the roomer, had encountered the officers Ralph Makley and George Rafalski walking near 700 West North Avenue, around 1:45 A.M. As the officers proceeded to Mrs. Olson's home, they were joined by officers Sykes and Gallet who were investigating a reported burglary by two men. While Sykes and Gallet stationed themselves at the rear of the house, Makley and Rafalski left Rees in front and knocked on the locked front door, which was opened by Mrs. Olson. The officers testified that her face was then bruised, swollen and was bleeding, her eyes discolored and her clothes disarranged. She exclaimed: "They're in the kitchen. They beat me up and raped me."

Officer Sykes and Gallet watched the vain attempt by Graves and the defendant to open the rear porch door and their return into the house. Officers Makley and Rafalski, passing through the front rooms, saw Graves and Edmunds enter a bedroom, from which they emerged upon command. The police officers testified that they then observed that Edmunds's pants zipper was open. Makley and Rafalski placed the two men in custody and led them outside through the front door. In front of the house Mrs. Olson identified the rapists and a search revealed that each possessed a knife and that Graves also possessed the watch that Rees, the roomer, had left on a dresser. Both the defendant and Graves denied their guilt. They were then taken to the

police station. The police officers then transported Mrs. Olson and Rees to Henrotin Hospital for treatment of Rees's eye and to County Hospital for examination of Mrs. Olson.

All five of the aforementioned witnesses identified the defendant as being one of the two individuals found in the complainant's house. Mrs. Olson identified her ripped undergarments and the knife which Edmunds, the defendant, had wielded and Edmunds later admitted the knife was his. Both the knife and the undergarments, along with Mrs. Olson's purse and pictures of her house and couch, were admitted into evidence over objection.

For the defense, Sarah Edmunds, the defendant's wife, and Mary Lee Northcross, his step-daughter, testified that the defendant did not leave their home at 1637 North Dayton Avenue until 2:00 A.M. of the morning in question, or after the rape of Mrs. Olson. The defendant testified that after several drinks he left home at about 2:00 A.M. and was walking down the alley toward a liquor store at Halsted and North Avenues when he was confronted by police officers, briefly searched and interrogated, and placed in a squad car. The police, he claimed, then proceeded to the house of Mrs. Olson who then accused him of rape. Inside the home he saw Graves, theretofore a stranger, as well as Mrs. Olson and Rees, both of whom had bruised faces and neither of whom said anything. The defendant denied that his pants zipper was open. After ten minutes Edmunds was brought outside, relieved of his knife, and transported to a police station. Around 4:00 A.M., in a room at the police station, Mrs. Olson, according to the defendant, at first failed to identify him and stated she had been drunk and, some 20 or 30 minutes later, identified him with hesitation.

In seeking reversal, the defendant contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt and that the trial court erred in overruling the

defendant's motion seeking to have the State turn over certain statements alleged to have been made by Mrs. Olson and Rees.

The rape victim, Mrs. Olson, provided a clear account of what occurred and related in a convincing manner that the defendant, after breaking into her home, forced her to engage in intercourse, twice with himself and once with his accomplice, by striking her and placing a knife against her throat. She specifically identified the defendant, whom she had observed in the light of a floor lamp at the time of the rape.

The inference that Rees returned with the police within 10 or 15 minutes, allegedly too brief an interval for the events narrated by the complainant, ignores the uncontroverted testimony that the forcible entry was prior to 1:00 A.M. and that the police arrival was around or after 1:45 A.M. The record does not disclose precisely how long Rees remained in the house after the forcible entry.

Nor can we agree with the conclusion of consent drawn by the defendant from the absence of testimony by the physician who examined Mrs. Olson, the rape victim. The People are not required to produce such medical testimony when sufficient other corroboration of the forcible intercourse is presented. *People* v. *Fort*, 14 Ill.2d 491; *People* v. *Hill*, 28 Ill.2d 438.

In the case at bar, there is an overwhelming supply of corroboration of Mrs. Olson's testimony: (1) Rees, the roomer, observed the defendant in the light of the front room before he was struck and before he left the house to acquire police assistance and identified him at the trial; (2) the complainant promptly reported the rape upon the arrival of the police; (3) the complainant's face at the time the police arrived was bruised, swolled and was bleeding, her eyes discolored, and her clothes disarranged; (4) the defendant, according to the police officers, was actually arrested inside the complainant's home; (5) the three testify-

ing police officers agreed that, when they interrupted the defendant's invasion of the complainant's home, his pants zipper was open; (6) both the defendant's knife and the complainant's purse which was ripped apart by the defendant with his knife were admitted into evidence.

The defendant's other arguments that he would not have committed rape knowing that Rees had left and would presumably seek aid and that the complainant, because she had been drinking, must have been drunk and therefore, cannot be believed, aside from being based upon assumptions not altogether supported by the record, simply cannot overcome the magnitude of the aforementioned evidence against the defendant. Similarly his dependence on the absence of accomplice testimony by the State disregards the witness's equal availability to the defense. *People* v. *Wright, 27* Ill.2d 557.

The testimony offered by the defense that the defendant had been apprehended at some distance from the crime and was weakly identified by the rape victim created a factual conflict applicable solely to the weight of the evidence and the credibility of the witnesses, and suitable for determination by the jury. The defendant was in our opinion clearly proved to have been guilty beyond a reasonable doubt. *People* v. *Elder, 25* Ill.2d 612.

The defendant next contends that prejudicial error was committed when certain alleged statements made by Rees and Mrs. Olson were not upon demand turned over to the defense for impeachment purposes.

Defendant, in his cross-examination of Mrs. Olson, inquired whether she made a statement concerning the assault to the police; the People objected to this question and the objection was sustained. A demand for Mrs. Olson's statement was then made. The State's Attorney advised the court that he had no such statement and the defendant's demand was denied. Substantially, the same sequence occurred in connection with the cross-examination of Rees;

544

inquiry as to the statement, a sustained objection, a demand, a denial of the existence of a statement by the State's Attorney and denial of the demand. The cross-examination of the People's witness officer Ralph Makley adduced the fact that the police took statements from both Mrs. Olson and Rees.

Here, the People do not contend that no such statements as related by officer Makley existed, but urge that the court properly denied defendant's demand for them as he failed to show that they were signed or adopted statements or substantially verbatim records of an oral statement. The People are in the contradictory position of having objected to questioning as to statements while arguing in support of denial of production of statements that no adequate foundation for production was made. Obviously the People cannot object to questioning that would establish foundation for production of a witness's statement and thereafter justify the denial of production because of the absence of foundation. The court should have permitted defendant to develop whether a statement available for impeachment of either Mrs. Olson or Rees existed, so that he might have the benefit thereof in cross-examining these two critical witnesses for the People. *People* v. *Wolff,* 19 Ill.2d 318, 328.

Because of the error in denying defendant an opportunity to establish the existence of producible statements of witnesses for the People, the judgment of the criminal court of Cook County is reversed and the cause remanded.

*Reversed and remanded.*