THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHNIE HUNT, Defendant-Appellant.

(No. 52856;

First District—March 12, 1971.

Bellows, Bellows & Magidson, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle, John McClory, and Thomas Walsh, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant was indicted for the crimes of murder and involuntary manslaughter. He was found guilty, after a jury trial, of the offense of involuntary manslaughter. Judgment was entered and he was sentenced to a term of two to seven years. On appeal defendant contends: (1) that the trial court erred by improperly defining the crime of involuntary manslaughter; (2) that the cross-examination of his character witnesses was improper; (3) that the trial court improperly instructed the jury on the effect of evidence of good character and reputation; (4) that the trial court erred in refusing to instruct the jury as to the effect of testimony of an accomplice witness; (5) that he was not proved guilty beyond a reasonable doubt; and (6) that defendant was improperly limited in his cross-examination of the State's chief witness.

The evidence presented at trial may be summarized. The deceased, Anton Novotny, was arrested for safekeeping by the Chicago Police on May 8, 1967, after he was found sitting in the middle of a street. Novotny had been drinking and was incoherent. Several days later Novotny was given a routine psychological examination at the House of Correction. He was not under any sentence of a court.

Several inmates at the House of Correction called by the State testified that they saw Novotny in the west cell house on May 16, 1967, and that the defendant, a jail guard, was having some trouble with Novotny; that defendant hit Novotny several times in the head with his fist and he was driven back into his cell. After Novotny was in the cell two inmates, Slim and Larry, went into the cell after him. One of the inmates testified that there was a lot of noise "like there was blows, you know, a fight, a hassle going on in the cell. And I heard the man scream." These witnesses could not see into the cell.

On orders from the defendant several inmates took Novotny from the cell towards the "strip cell." While Novotny was being dragged the inmates were kicking and hitting him.

The State also called as a witness Willie Dorsey, who was a co-indictee of the defendant but was not tried jointly with defendant. He testified that at the time of Novotny's death he was an inmate at the House of Correction; that on the morning of May 16, 1967, after the line-up was going to breakfast, Novotny refused to go into his cell. The guards had to put him in the cell. In the afternoon he saw the defendant try to push Novotny into a cell. However, Novotny resisted. The defendant then hit Novotny in the head, kneed him in the stomach and hit him again on the head. As Novotny started crawling under the bed in the cell, the defendant began kicking him and pulled him out of the cell on to the gallery. Novotny again crawled under the bed and the defendant, with

the help of some inmates, pulled him out of the cell. As Novotny was lying on the gallery the defendant slammed down on Novotny's chest with his feet and "stomped" him. Novotny was then dragged to the strip cell.

Dorsey further testified that he heard Novotny moan after he was stomped. Dorsey was only twelve to fifteen feet away when he heard Novotny moan. On cross-examination Dorsey testified that the defendant was the only guard around at the time.

The remainder of the State's case consisted of medical evidence of Novotny's injuries. There were injuries to Novotny's right eye, chest wall, abdomen and thighs. In the opinion of two doctors who testified for the State, the cause of death was from a beating or kicking. One of the doctors placed the time of death at approximately noon on May 17, 1967, and placed the time of injury as twenty-four hours earlier.

The defendant's witnesses were guards and other personnel at the House of Correction. They testified that neither the defendant nor any inmate beat, kicked or had a fight with Novotny. Further, none of these witnesses saw or heard any unusual noise, screaming or hollering from the cells on May 16, 1967. One of the guards testified that the defendant was watching the hall gangs assigned to various jobs on the main floor and in the kitchen, or he was up in the front doing clerical work. The defendant usually went to lunch at 11:00 A.M. and would return at 11:45 A.M.

Defendant's witnesses also testified that they knew the general reputation of the defendant in the community in which he lived to be good and that his reputation for peace and quiet and for being a law abiding citizen was also good.

The defendant testified in his own behalf. He denied striking, beating, kicking or abusing the deceased in any way. He did not drag, push or stomp him either. Defendant also testified that he did not see any inmate pull or push the deceased to the rear of the cell house nor did he see any inmate strike, beat or kick the deceased.

*Opinion*

Defendant contends that the trial court erred by improperly defining the crime of involuntary manslaughter when it gave State's Instruction No. 13. The trial court gave two separate instructions defining the crime of involuntary manslaughter. The first instruction, State's Instruction No. 12, was in the language of Ill. Rev. Stat. 1967, ch. 38, par. 9—3:

"A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly."

The second instruction, State's Instruction No. 13, was also given:

"If a person is unlawfully assaulted without lawful provocation and an injury is inflicted upon him which would not have been mortal to a man in ordinary good health but which was mortal to him in his then physical condition, the assailant may be guilty of murder or involuntary manslaughter, as the case may be, even though the assailant did not know the physical condition of the person assaulted."

Defendant argues that Instruction No. 13 is directly contradictory to the first instruction and is contradictory to the statute defining involuntary manslaughter. The language of Instruction No. 13 was taken from the opinion of *Cunningham v. People* (1902), 195 Ill. 550. However, in *People v. Wicks,* 115 Ill.App.2d 19, 22, we adopted the language of *People v. Harper,* 36 Ill.2d 398, 404, 223 N.E.2d 841, which stated:

"The State has cited no case, and we have found none, that approves an instruction in the language given here. The fact that certain language is appropriate in the context of an opinion does not necessarily justify its use in an instruction without further explanation."

■■ We conclude that it was error for the trial court to give State's Instruction No. 13. In *Cunningham, supra,* there was testimony by physicians on behalf of the People and the defendant concerning the deceased's physical condition prior to the assault upon him. In the instant case, however, no medical testimony was offered to show Novotny's condition prior to the attack upon him at the House of Correction. Therefore, one of the requirements for the giving of this instruction, a showing of the then physical condition of the person assaulted, was not proven.

■■ Furthermore, Instruction No. 13 incorrectly states the law. To be convicted of involuntary manslaughter a person must perform *recklessly* those acts which are *likely* to cause death or great bodily harm to some individual.

Illinois Revenue Statutes, 1967, ch. 38, par. 4—6, defines "reckless" as:

"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

There must be "conscious disregard" of a substantial and unjustifiable risk before a person's acts will be considered reckless. As the court in *People v. Guthrie,* 123 Ill.App.2d 407, 413, stated:

"Thus, the recklessness intended by the statute would indicate that involuntary manslaughter occurs where the acts are performed with a

conscious awareness of risk and a gross disregard thereof." See Committee Comments, Ill. Rev. Stat. 1967, ch. 38, par. 9—3.

Instruction No. 13 states, however, that "the assailant may be guilty of murder or involuntary manslaughter as the case may be, even though the assailant did not know the physical condition of the person assaulted." Under this definition the jury need only find that there was an unlawful assault and death to find a defendant guilty of involuntary manslaughter, and the jury need never determine whether the acts were done with the required mental state of recklessness.

■■ We find that it was reversible error for the trial court to give State's Instruction No. 13.

Defendant next contends that the cross-examination of his character witnesses was improper in that the prosecutor was allowed to cross-examine his character witnesses concerning prior acts of misconduct on the part of defendant which were unrelated to the offense charged. In *People v. Page,* 365 Ill. 524, 528, the court, in discussing the cross-examination of defendant's character witnesses, stated:

"The reputation of a person cannot be impeached by proof of particular acts. It must be by proving his general reputation for the particular matter or misconduct in question, to be bad. Neither on cross-examination nor in rebuttal of proof of good character can particular acts of misconduct be shown. [*People v. Anderson,* 337 Ill. 310, 332; *People v. Celmars,* 332 id. 113; *Aiken v. People,* 183 id. 215.] We held in *McCarty v. People,* 51 Ill. 231, that every man is presumed to be ready at all times to defend his general character but not his individual acts. Of those he must have due notice. The questions asked on cross-examination had no justification. Their tendency was to prejudice the jury against defendant. A person on trial charged with a particular crime is not required to defend against every possible aspersion which may be made against him but which is in no way connected with the issue to be determined. Where such aspersions appear in the record the question is not what a court of review may think of the defendant's guilt or innocence but what the jury would have done if the case had been submitted to them without those aspersions. We have often condemned the practice, in criminal cases, of asking improper questions for the purpose of creating in the minds of the jury a prejudice against the defendant, and judgments of conviction have been reversed for such conduct." *People v. Anderson, supra; People v. Rogers,* 324 Ill. 224; *McCarty v. People, supra.*

See also *People v. Hermens,* 5 Ill.2d 277, and *People v. Greeley,* 14 Ill.2d 428.

■■ We believe that the defendant was prejudiced by the prosecutor's questions asked of defendant's character witnesses concerning a 1957 letter in his personnel file and also by the prosecutor's inquiry as to whether these character witnesses knew that the defendant carried a blackjack contrary to the rules of the House of Correction.

Defendant also argues that the trial court improperly instructed the jury on the effect of evidence of good character and reputation. Defendant tendered two instructions on good reputation. Defense Instruction No. 16, which was given by the trial court, stated:

"The court instructs the jury that evidence of the good reputation and character of the defendant for being a peaceable and law abiding citizen is competent legal evidence and to be considered by the jury, together with all the other evidence in the case, and if, after having considered all the evidence offered in the case, the jury are not convinced of the guilt of the defendant beyond a reasonable doubt, they should find the defendant not guilty."

Defense Instruction No. 3, which was refused by the trial court, stated:

"If the jury believe from the evidence in this case that the defendant, prior to the homicide, bore among his neighbors and with the people with whom he was acquainted an excellent reputation as a good, peaceable and orderly citizen, then they are instructed that such good character and reputation is proper for the consideration of the jury in determining the guilt or innocence of the defendant, and in a case where the proof of the defendant's guilt is not clear, such evidence of good character should generate a doubt in the minds of the jury of the defendant's guilt."

■■ Defendant claims that the failure of the trial court to give Instruction No. 3 left the jury without any instructions as to the purpose of character evidence. However, Instruction No. 3 is not a correct statement of the law, and its refusal, therefore, not error. Where the proof of defendant's guilt is "not clear" the jury must find him not guilty, regardless of evidence of good character. We find Defense Instruction No. 16 unobjectionable, though not a fully adequate explanation of reputation evidence. If such an instruction is to be given at all, we recommend the one which is to be found in I.P.I. Criminal at Par. 3.16.

Defendant next argues that the trial court erred in refusing to instruct the jury as to the effect of testimony of an accomplice witness. He claims that Willie Dorsey, a co-indictee, was an accomplice witness, even though throughout all of his testimony Dorsey denied any complicity in the crime and no other evidence implicated him.

■ In *People v. Henry*, 74 Ill.App.2d 225, the court found that a jury instruction was properly given which defined an accomplice witness as

one who testified that he was involved in the commission of a crime with the defendant. In the instant case, however, Dorsey denied any involvement in the crime which led to Novotny's death. Therefore, we find no error in the trial court's refusal to give Defense Instruction No. 13.* Also, the court could reasonably have determined that any accomplice instruction may be improper as singling out only a part of the evidence.

■■ Since we have determined that Willie Dorsey was not an accomplice witness, we need not consider defendant's contention that Dorsey was required to be cross-examined as an accomplice witness. However, we would point out that it was improper for the trial court to allow counsel for the witness Dorsey to offer objections during Dorsey's cross-examination testimony by defendant's attorney. Dorsey was not a party to this cause and his counsel should not have been allowed to participate in or interfere with the trial.

This case being subject to retrial, we also point out that there was error in the trial court's limitation of the cross-examination of Dorsey as to impeachment. Counsel for defendant sought to lay a foundation for impeachment by questioning the witness concerning a statement he had given to the police. The court erroneously cut off this questioning on the ground that the statement was not in evidence.

■■ Since this case is subject to retrial we will consider defendant's contention that the court erred in limiting the cross-examination of Dorsey as to impeachment. When counsel for defendant sought to lay a foundation for impeachment by questioning the witness concerning a statement he had given the police, the court cut off this questioning on the ground that the statement was not in evidence. The court erred in so ruling since laying a foundation for an impeaching statement is permissible (*People v. Edmunds*, 30 Ill.2d 538), and the admissibility of such a statement into evidence is irrelevant.

The defendant next contends that he was not proved guilty beyond a reasonable doubt. He argues that as against the State's occurrence witnesses, all of whom were inmates at the House of Correction, the defense presented the testimony of correctional officers and guards at the House of Correction who testified that nothing unusual occurred in the west cell house on May 16, 1967, and that defendant had a good reputation for being a peaceable and law abiding citizen.

■■ The credibility of the witnesses and the weight to be given their testimony are for the jury to decide. The verdict of a jury will not be disturbed unless it is so unsatisfactory as to leave a reasonable doubt of

---

* We note that the instruction given in *Henry*, a 1966 case, is the same as I.P.I.-Criminal, 3.17, Testimony of an Accomplice, which became effective on January 1, 1969.

defendant's guilt. (*People v. Hampton*, 44 Ill.2d 41, and *People v. Keane*, 127 Ill.App.2d 383.) We find that the evidence was not so unsatisfactory as to cause a reasonable doubt of defendant's guilt.

For the reasons herein set forth the judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

ENGLISH, P. J., and LORENZ, J., concur.