THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MORRIS CAMPBELL, Defendant-Appellant.

(No. 72-35;

Fifth District—May 1, 1975.

Paul Bradley, Lynn Sara Frackman, and Stephen P. Hurley, all of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, and Thomas P. Hennessy, III, Law Student, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

After a jury trial in the circuit court of St. Clair County the defendant was convicted of the offense of theft over $150 and sentenced to a term of imprisonment of not less than 1 nor more than 2 years. The defendant was represented by retained counsel.

We first consider the defendant's contention that he was not proven guilty beyond a reasonable doubt. The defendant, who was an elected official of the East Side Levee and Sanitary District, was accused of theft in that he exerted unauthorized control over funds in the amount of $420 which were the property of the sanitary district. The defendant admits that he did exert control over the funds in question but asserts

that the evidence fails to establish that he possessed the intent to permanently deprive the sanitary district of the funds.

It is undisputed that the East Side Levee and Sanitary District entered into an agreement with the Village of Alorton, Illinois, in the fall of 1969. Pursuant to that agreement the Village of Alorton was to rent certain flood protection equipment from the sanitary district for a period of 43 days at a rate of $19.53 per day. The treasurer for the Village of Alorton wrote checks of $420 each on November 3, 1969, and December 4, 1969, payable to the defendant. The checks were written on the Village Motor Fuel Tax Account and were intended to serve as payment for the rental of the equipment from the sanitary district. The check written on November 3, 1969, is the subject of the instant theft charge. Both checks were given to the defendant who subsequently cashed the checks at a grocery store. The defendant did not turn the funds over to the sanitary district.

In April 1970 an auditor from the Illinois Division of Highways audited the Village of Alorton's Motor Fuel Tax Account. The auditor sent a letter to the clerk of the Village of Alorton calling to the clerk's attention the "irregularity" of the two payments totaling $840 to the defendant. The payments were deemed irregular because the checks were made payable to an individual rather than to the East Side Levee and Sanitary District. The village clerk then sought verification from the sanitary district that the money in question had been received. A letter was then sent to the village clerk on the stationery of the East Side Levee and Sanitary District stating that $840 had been received from the Village of Alorton as payment for the rental of equipment during 1969.

In February 1971 the defendant told the mayor of Alorton that he wanted to return the $840 to the village. He requested that the village then write a check for $840 to the East Side Levee and Sanitary District. The mayor brought the matter up for consideration at a meeting of the village board on March 16, 1971. At that meeting the village board decided to accept the money from the defendant if it were returned. The defendant did give $840 to the mayor's secretary in late March or early April 1971. The money was subsequently given to the village treasurer who on June 29, 1971, wrote a check for $840 to the East Side Levee and Sanitary District.

The defendant does not deny any of the above facts but maintains that he never had the intent to deprive the sanitary district permanently of the funds in question. He testified that when he received the check which was written on November 11, 1969, by the treasurer of the Village of Alorton he offered it to a female clerk in the sanitary district office. When she refused to accept the check, the defendant cashed the check

at a grocery store. He allegedly offered the cash to somebody at the sanitary district office, but that person refused to accept the cash. The defendant stated that he then put the money in an envelope and locked it in his desk drawer with the intention to return the cash at some later date. He allegedly forgot about the money in the drawer until he discovered it 6 or 7 months later. The defendant testified that in March 1971 he gave the money to a female employee in the office of the mayor of Alorton. On June 23, 1971, the defendant was indicted for the offense of theft.

■■ The defendant contends that his conviction must be reversed because the State failed to prove the requisite intent. We disagree. It is well established that in a trial for theft the requisite mental state may be deduced by the trier of fact from the facts and circumstances surrounding the alleged criminal act. (*People v. Heaton,* 415 Ill. 43, 112 N.E.2d 131; *People v. McClinton,* 4 Ill.App.3d 253, 280 N.E.2d 795.) Whether a defendant who is accused of theft had the felonious intent to permanently deprive the owner of the use or benefit of the stolen property is a question for the jury. (*People v. Heaton; People v. Reans,* 20 Ill. App.3d 1005, 313 N.E.2d 184.) The right to believe or disbelieve the testimony of a defendant as to the existence of the requisite felonious intent is the prerogative of the jury. (*People v. Reans.*) In the instant case we find that the circumstances of the defendant's conduct justify the finding of the jury that the defendant possessed the intent to deprive the East Side Levee and Sanitary District of the funds in question. The defendant cashed the check in question and did not attempt to return the money to the Village of Alorton until more than 1 year had passed. He did not attempt to return the money until after an audit of the Village of Alorton's Motor Fuel Tax Account disclosed the "irregularity" of the payments to the defendant. Under these circumstances the jury had the right to disbelieve the defendant's testimony that he innocently put the money in his desk drawer and forgot about it. We find therefore that the evidence is not so unsatisfactory as to justify a reasonable doubt of guilt.

The defendant's next contention is that the trial court erred in denying his motion for a change of venue. Defense counsel argued in the motion and at the hearing on the motion that the defendant could not receive a fair trial in St. Clair County because there had been a substantial amount of adverse pretrial publicity. Fifteen newspaper articles which had appeared in local newspapers and which discussed the defendant's case were attached to the motion for a change of venue. Some of the articles were merely factual accounts of the status of the case. Nine of the articles, however, referred to the fact that the defendant had recently been convicted of another offense involving misconduct in office. The trial court denied the motion for a change of venue, accepting the prose-

cutor's argument that *voir dire* examination should be conducted so that it could be determined whether an impartial jury could be empaneled.

*Voir dire* examination began on the afternoon of November 4, 1971, and was concluded the next day. The 13th potential juror called during *voir dire* was Judith Storment. She testified that there had been a great deal of discussion about the defendant's case among the people who had been called for jury duty. Mrs. Storment further testified that many of the prospective jurors brought newspapers with them when they came to the courthouse in the mornings. She stated that a rumor that the defendant was attempting to delay his trial by faking a heart attack was discussed by the prospective jurors. She further stated that several of the jurors had expressed their opinion that they believed the rumor. Mrs. Storment also stated that she did not hear anybody express an opinion as to the guilt or innocence of the defendant. She was excused as a juror by the court. After Mrs. Storment's testimony, defense counsel renewed his motion for a change of venue. The motion was denied, and *voir dire* continued. After three more prospective jurors were questioned the defendant again renewed his motion for a change of venue. The motion was again denied. Thirty-one other prospective jurors were questioned before 12 jurors and 2 alternates were chosen. Defense counsel did not renew his motion for a change of venue at the close of *voir dire.*

■■ " '[T]he rule is that an accused is entitled to a change of venue when it appears there are reasonable grounds to believe that the prejudice alleged actually exists and that by reason of the prejudice there is reasonable apprehension that the accused cannot receive a fair and impartial trial. [Citations.]' " (*People v. Gendron*, 41 Ill.2d 351, 354, 243 N.E.2d 208.) The proof of potentially harmful publicity within a community does not alone establish proof of community prejudice as each case must be judged on its own facts. (*People v. Torres*, 54 Ill.2d 384, 297 N.E.2d 142.) The examination of prospective jurors on *voir dire* is generally the most valuable method of determining whether pretrial publicity has so prejudiced the defendant that he could not receive a fair trial. (*People v. Torres.*) In the instant case 5 of the 12 jurors selected to hear the case testified at *voir dire* that they had never heard anything about the defendant's case. Seven of the jurors stated that they had read or heard publicity about the case but that they had not formed an opinion as to the defendant's guilt and would not be influenced by what they had read and heard. All jurors claimed to be impartial and insisted that they were not prejudiced against the defendant.

■■ It is significant that defense counsel did not challenge for cause a single member of the jury sworn to try the case. The failure to chal-

lenge any of the jurors for cause is strong evidence that counsel was convinced that the jurors were not biased and had not formed opinions as to the defendant's guilt. *Beck v. Washington,* 369 U.S. 541, 8 L.Ed.2d 98, 82 S.Ct. 955; *People v. Torres.*

■ Whether to grant a motion for a change of venue is discretionary with the trial court and the court's decision will not be reversed unless it constitutes a clear abuse of discretion. (*People v. Myers,* 20 Ill.App.3d 83, 312 N.E.2d 741.) We find that the pretrial publicity in the instant case was not so inflammatory that the court was required to disregard the testimony of the jurors that they would be fair and impartial. For that reason, and because defense counsel did not challenge any of the jurors for cause, we hold that the trial court did not abuse its discretion in denying the defendant's motion for a change of venue.

The defendant also contends that the trial court erred in denying his third motion for a substitution of judges. The first two motions were granted automatically, and Judge Alvin Maeys was then assigned to the case. The defendant then filed his third motion for substitution of judges alleging that Judge Maeys was prejudiced against him. In an affidavit filed in support of the motion the defendant stated that in the previous year he had been found guilty of 5 counts of official misconduct in a bench trial by Judge Maeys. Judge Maeys had fined the defendant $250 on each count and ordered him removed from office as a trustee of the East Side Levee and Sanitary District. At the hearing on the motion defense counsel argued that the motion should be granted because the instant case, like the case heard by Judge Maeys the previous year, concerned alleged misconduct in office on the part of the defendant. Counsel argued that since the alleged crimes were of a similar nature, it would be difficult for Judge Maeys to remain unbiased. The defendant testified at the hearing and stated that because of his prior trial before Judge Maeys, he had the feeling that he would not receive a fair trial if Judge Maeys presided at the trial in the instant case. Judge Maeys then stated that he had examined his conscience and was convinced that he was not prejudiced against the defendant. For that reason the motion for a substitution of judges was denied.

The defendant contends that he had an absolute right to have his motion for a substitution of judges granted. That contention is without merit. Subsection (a) of section 114—5 of the Code of Criminal Procedure gives a defendant an absolute right to have two judges removed from his case if he files timely motions alleging that those judges are prejudiced against him. (Ill. Rev. Stat., ch. 38, § 114—5(a).) A defendant whose motion for substitution is not brought under subsection (a) may, pursuant to subsection (c) of section 114—5, move for a substitution

of a judge for cause. Since the defendant in the instant case had exhausted his rights under section 114—5(a) before filing the motion pertaining to Judge Maeys, he did not have an absolute right to have Judge Maeys removed. *People ex rel. Walker v. Pate*, 53 Ill.2d 485, 292 N.E.2d 387.

■■ The defendant argues in the alternative that, even if he did not have an absolute right to have his motion granted, he did show cause which justified the relief sought in the motion. The defendant presented no evidence that Judge Maeys may have been prejudiced against him other than that Judge Maeys had presided at the defendant's previous trial. The mere fact that a judge who is assigned to hear a defendant's case has presided at another trial of the same defendant and has sentenced the defendant following conviction does not necessarily establish cause which necessitates a change of venue. (*People v. Dowling*, 95 Ill. App.2d 220, 238 N.E.2d 134.) The court itself is in the best position to determine whether it may be prejudiced against the defendant. (*People v. Polk*, 55 Ill.2d 327, 303 N.E.2d 137.) In the instant case Judge Maeys stated that he had examined his conscience and had determined that he was not prejudiced against the defendant. The judge noted that the defendant had conducted himself as a perfect gentleman at this first trial and that punishment imposed upon the defendant after the first trial was light. The defendant admitted that Judge Maeys did not demonstrate any type of prejudice during the first trial. Under these circumstances, we hold that Judge Maeys did not err in denying the defendant's motion for a substitution of judges.

The defendant next contends that the court erred in admitting People's Exhibit No. 4 into evidence in violation of the hearsay and best evidence rules. That exhibit is a copy of a letter sent on September 22, 1970, to the village clerk of Alorton from an auditor for the Illinois Division of Highways. In April 1970 the auditor had audited the Village of Alorton's Motor Fuel Tax Account. The auditor's letter mentioned the "irregularity" of the payments to the defendant.

■■ The hearsay rule prohibits the introduction into evidence of an out of court statement, whether written or oral, which is offered for the truth of the matter asserted therein. (*People v. Carpenter*, 28 Ill.2d 116, 190 N.E.2d 738.) The hearsay rule does not encompass extrajudicial statements which are not offered for the purpose of proving the truth of the matters asserted in the statement. (*People v. Richardson*, 21 Ill.App.3d 859, 316 N.E.2d 37.) A letter is not inadmissible hearsay if it is offered to prove that the recipient had notice of the information contained therein rather than to prove the truth of matters asserted. (*Northern Trust Co. v. Moscatelli*, 54 Ill.App.2d 316, 203 N.E.2d 447.)

The above rule is applicable in the instant case. People's Exhibit No. 4 was admissible, not to prove the truth of any statements made by the auditor who wrote the letter, but to show that the officials of the Village of Alorton received notice of the information contained in the letter. The fact that the village officials had such notice is relevant because it explains the action taken by the village clerk after receipt of the letter. After the clerk received the letter, he sought verification from the East Side Levee and Sanitary District that the money in question had been received. The village clerk subsequently received a letter written on the stationery of the East Side Levee and Sanitary District which acknowledged receipt of the money. The letter was signed by the defendant and was introduced into evidence as People's Exhibit No. 5. People's Exhibit No. 5 was relevant because it tends to show that the defendant had notice that he had received the funds in question prior to the time that he had offered to return the funds to the mayor of Alorton. This refutes the defendant's contention that he had merely forgotten that he had received the money. We conclude that People's Exhibit No. 4, by establishing that the clerk of the Village of Alorton had received notice of the matter asserted therein, was relevant in that it laid the groundwork for the admissibility of People's Exhibit No. 5, an exhibit of significant relevance. We hold, therefore, that People's Exhibit No. 4 was not inadmissible hearsay.

■■ The defendant further contends that People's Exhibit No. 4 was inadmissible in light of the best evidence rule. The argument has no merit. "The rule of evidence commonly known as the best evidence rule is that the highest degree of proof of which the case from its nature is susceptible must, if accessible, be produced." (32A C.J.S. *Evidence* § 777 (1964); *People v. Poindexter*, 18 Ill.App.3d 436, 305 N.E.2d 400.) The defendant maintains that People's Exhibit No. 4 was secondary evidence of the audit which was made of the Village of Alorton's Motor Fuel Tax Account. His argument is not persuasive. People's Exhibit No. 4 is not a copy of the audit or a summary of the audit. It is a letter written by the auditor which makes reference to one fact disclosed by the audit. The letter was introduced to show that the clerk of the Village of Alorton had notice of the matters asserted therein. The best evidence for that purpose was the letter that the auditor actually sent to the village clerk rather than the audit itself.

The defendant also contends that he was denied a fair trial because the State presented evidence suggesting that he had committed a subsequent crime. The defendant was charged with the theft of a $420 check which was written by the treasurer for the Village of Alorton on November 3, 1969. The State presented evidence tending to show that the de-

fendant cashed that check and thus deprived the East Side Levee and Sanitary District of the funds. The State also presented evidence, however, that the defendant received a second $420 check which was written by the treasurer for the Village of Alorton on December 4, 1969. The State's evidence proves that the defendant also cashed that check and failed to deliver the funds to the East Side Levee and Sanitary District. Since it was the first check that was the basis for the charge in the instant case, the defendant argues that it was prejudicial error for the State to introduce evidence concerning the second $420 check.

■■ As a general rule proof of an offense subsequent to the date of the alleged crime is contrary to the presumption of innocence and is not admissible. (*People v. Chronister*, 379 Ill. 617, 41 N.E.2d 750.) Evidence of subsequent crimes is admissible, however, where it tends to establish motive or intent, absence of mistake or the existence of a common scheme or design. (*People v. McDonald*, 23 Ill.App.3d 86, 318 N.E.2d 489; *People v. Nelson*, 17 Ill.App.3d 224, 308 N.E.2d 122.) In the instant case both checks in question were written by the same person and were given to the defendant for the same reason. Each check was intended to serve as payment by the Village of Alorton for the rental of certain flood protection equipment. The defendant cashed each check and failed to deliver any of the money to the East Side Levee and Sanitary District. Under these circumstances we believe that the evidence concerning the second $420 check was admissible because it tends to show a common scheme or design. The evidence was also admissible because it tends to show the absence of mistake on the part of the defendant.

The defendant also contends that he was denied the opportunity to fully cross-examine three of the State's witnesses. The defendant wished to elicit testimony from those witnesses which tended to prove that the defendant eventually returned the money in question to the Village of Alorton. Prior to trial, the State was granted a protective order by which defense counsel was prohibited from questioning the State's witnesses about the defendant's repayment of the money. Defense counsel asked the court to reconsider the protective order at trial, but the court refused. Defense counsel then presented offers of proof which tended to prove that the defendant returned the money in question to the Village of Alorton on or about March 16, 1971, that the money was returned with the intention that it would be transferred to the East Side Levee and Sanitary District and that on June 29, 1971, the money was given to the East Side Levee and Sanitary District by the Village of Alorton. After the offers of proof were presented, defense counsel moved that the testimony be admitted into evidence. The court, accepting the prosecutor's

argument that the evidence was beyond the scope of the direct examination, denied the motion.

■■ The defendant argues that the evidence concerning his repayment of the money in question was relevant as to the issue of his intent. While the fact that the defendant has made restitution is no defense to the charge of theft, it is a factor which is relevant in determining the absence of the requisite felonious intent. (See *People v. Barrett*, 405 Ill. 188, 90 N.E.2d 94.) The testimony concerning the defendant's repayment of the money in the instant case, therefore was relevant. The State contends that even if the testimony was relevant, defense counsel's offers of proof were beyond the scope of the direct examination and were therefore properly rejected by the trial court. We disagree. An accused has the right to cross-examine State witnesses concerning any matter which goes to explain, modify or discredit what they said on direct examination. (*People v. Strother*, 53 Ill.2d 95, 290 N.E.2d 201.) In the instant case the State witnesses gave testimony concerning the defendant's receipt of the money in question from the Village of Alorton. Testimony concerning the defendant's return of that money to the Village of Alorton would have constituted a relevant modification of the testimony of the State witnesses. We find, therefore, that the court erred in restricting the defendant's cross-examination of the State witnesses.

■■ The court's error, however, does not require reversal of the defendant's conviction. It is well established that the rejection of evidence is not prejudicial where substantially the same evidence is admitted at some stage of the trial. (*People v. Moretti*, 6 Ill.2d 494, 129 N.E.2d 709; *People v. Eilers*, 18 Ill.App.3d 213, 309 N.E.2d 627.) In the instant case the defendant testified that he informed the mayor of Alorton in February 1971 that he wanted to return the money to the village. The defendant further testified that he did return the money in question to the mayor's office in March 1971. The mayor of Alorton corroborated the defendant's testimony. He stated that the defendant offered to return the money in February 1971, that the money was returned in late March or early April 1971 and that the treasurer of the Village of Alorton transferred the funds to the East Side Levee and Sanitary District on June 29, 1971. A certified public accountant who had audited the books of the East Side Levee and Sanitary District testified that the Sanitary District did receive $840 from the Village of Alorton in June 1971 and that the money was payment for rented equipment. The State introduced no evidence which contradicted any of the above testimony. The evidence clearly establishes therefore, that the defendant did return the money in question to the Village of Alorton in March or April 1971 and that the village transferred the funds to the East Side Levee and Sanitary District in

June 1971. Under these circumstances we find that the defendant was not prejudiced by the restriction of his cross-examination of the State's witnesses.

■■ The defendant's final contention is that his sentence should be reduced to a term of probation or, in the alternative, that the cause should be remanded for resentencing. The court denied the defendant's application for probation and imposed a sentence of not less than 1 nor more than 2 years. In denying the application for probation the court undoubtedly considered the fact that the defendant had previously been convicted of five counts of official misconduct. At the time the defendant was sentenced in the instant case, his appeal from the prior convictions was pending. This court subsequently reversed the defendant's prior convictions. (*People v. Campbell*, 3 Ill.App.3d 984, 279 N.E.2d 123.) The sentence imposed in the instant case should not stand if it was based partially upon the fact that the defendant had been convicted of prior offenses which have since been reversed. We therefore hold that, even though the trial court did not abuse its discretion in sentencing the defendant, the case must be remanded for resentencing with directions that the court reconsider the defendant's application for probation.

Conviction affirmed. Remanded for resentencing.

G. MORAN and CARTER, JJ., concur.