THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LARRY S. HILL, Defendant-Appellant.

Fourth District   No. 14153

Opinion filed January 13, 1978.

CRAVEN, J., dissenting.

James W. Johnson, of Decatur (Jessica Stricklin, of counsel), for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Donald R. Parkinson, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his convictions of delivery of controlled substances entered upon the respective jury verdicts, (1) delivery of MDA (methylenedioxyamphetamine) to Fred Donini, (2) delivery of MDA to David Hunter, and (3) delivery of PCP (phencyclidine). Concurrent sentences of 3 to 10 years were imposed.

The testimony discloses that IBI agents, Donini and Inlow, with an informant, Hunter, went to defendant's residence. Hunter asked defendant to purchase PCP. He and defendant went to another room; the latter produced a bag and the contents tested to be PCP. They returned to the room where the agents remained; the bag was weighed and each agent purchased $600 worth. The money was counted and defendant received the $1200.

Hunter, Donini and Inlow each testified that as they were leaving defendant asked if they wanted some MDA. Upon acceptance, defendant went to get a vial or package from which he made two small paper bags giving one each to Hunter and Donini. Hunter later gave his packet to Donini but they were not kept separately and the witnesses could not state which was given to Hunter and which to Donini. Donini and Inlow testified that defendant stated that he could get tuinal, seconal, carbinol and placidyls in lots of 1000 or more and quoted a price. There was a tentative discussion as to future purchases. The named substances are barbiturates.

Defendant testified that Hunter brought the agents to his residence and asked defendant for the package that he, Hunter, had left there; that they went to the basement to get the package and that Hunter delivered a bag to Donini and Inlow; the contents were weighed and money exchanged. He testified that the money was left with him to apply on a debt of Hunter. On direct examination defendant did not testify to the MDA transaction but on cross-examination denied having either PCP or MDA.

Mike Smith testified in behalf of defendant that Hunter carried out the drug transaction with the agents and defendant was not in the room at the time. There is a conflict in the testimony as to whether the Smith who testified was the same Smith to whom the agents were introduced when they received the controlled substances at defendant's residence.

Defendant objected to the testimony that defendant had stated that he could obtain the several controlled substances (barbiturates) in large quantities and stating a price. He argues that it is reversible error to admit "evidence of purported subsequent offenses".

Defendant agrees that proof of prior similar offenses is admissible to show identity, modus operandi, knowledge, motive, intent, accident or absence of mistake if they are issues in the case, but that such evidence is inadmissible to simply show propensity to commit the offenses charged. (*People v. Cole* (1963), 29 Ill. 2d 501, 194 N.E.2d 269.) He cites *People v. Chronister* (1942), 379 Ill. 617, 41 N.E.2d 750, which holds that in a prosecution for forgery evidence of a subsequent forgery is not admissible for the purpose of proving knowledge and intent at the time of the first forgery.

■■ Defendant's authorities do not focus upon the actual question. We do not agree that the testimony challenged amounts to proof of a subsequent offense for the testimony does not purport to show any subsequent act performed which would constitute an offense.

■■ The statements of defendant to which the prosecution witnesses testified were made incident to and a part of the transaction described in evidence. The statements of the defendant disclosed both his present willingness to make a future sale of a controlled substance and his claim of present ability to procure such substances for sale. In the cases regulating the admissibility of evidence of prior and subsequent offenses, the jury is asked to make an appropriate inference from the fact of a criminal act described in evidence. The testimony at issue here is a direct statement by defendant admitting the fact of his present state of mind. The intent and knowledge shown are relevant to his intent and knowledge at the time of the delivery for which defendant was being tried. As in *Cole*, we hold that the evidence was relevant for purposes other than showing a propensity to commit crime.

■■ Defendant argues that there is no evidence that the various

barbiturates offered for sale are part of a crime similar to the delivery of PCP or MDA. We take judicial notice that each are scheduled as a controlled substance. Defendant was charged with the delivery of the controlled substances in violation of section 401 of the Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1401). The elements of the offenses charged are the same for all the controlled substances identified in that statute regardless of classification or schedule. No authority is cited and we find no logical reason to conclude that there must be expert testimony showing similarity of the barbiturates to MDA or PCP. It appears, in fact, from the statutory classification that the barbiturates offered for sale are deemed more harmful than either MDA or PCP.

Defendant urges reversible error when the trial court sustained objections to defendant's cross-examination of Hunter, designed as a foundation for impeachment. It does not clearly appear upon what issue he was to be impeached, but from the context of the record it appears to have concerned the transfer of money. The question was:

> "Do you remember a conversation you had in my office *with me* June 28, 1976." (Emphasis supplied.)

The second question was directed to the same conversation. No offer of proof was made when the objection was sustained.

Defendant cites *People v. Edmunds* (1964), 30 Ill. 2d 538, 198 N.E.2d 313, and *People v. Hunt* (1971), 132 Ill. App. 2d 314, 270 N.E.2d 243. Each held that it was error to deny cross-examination directed to a foundation concerning statements which might impeach by the witness to police.

The State's Attorney cited *People v. Gendron* (1968), 41 Ill. 2d 351, 243 N.E.2d 208, *cert. denied* (1969), 396 U.S. 889, 24 L. Ed. 2d 164, 90 S. Ct. 179. In that case the trial court refused to permit the defendant to call the State's Attorney to testify concerning guns and ballistic matters which the prosecution had not introduced into evidence. The opinion stated the view that courts were reluctant to permit an attorney to appear both as a witness and an advocate in the same case and adopted the language that:

> "[J]udicial discretion is generally exercised to prevent testimony by an advocate in *favor* of the party whom he represents * * *."
> (41 Ill. 2d 351, 358, 243 N.E.2d 208, 213.)

In *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, it was stated that the trial court had a wide discretion in refusing to permit an attorney to testify at trial in favor of his client. In each of such cases it appears that other sources were available to testify upon the issue presented.

In *People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448, *appeal denied*, 64 Ill. 2d 596, we find facts substantially similar to the present question. During cross-examination of a prosecution eyewitness to armed robbery, the trial court refused to permit defense counsel to

cross-examine the witness as to a conversation between the witness and counsel. Such conversation would be a foundation for impeachment in a substantial degree of the witness's identification.

The trial court pointed out that to impeach the witness counsel would have to testify to the conversation and that he would not permit counsel to so testify unless he withdrew from the case. The latter refused to withdraw, but made an offer of proof. In affirming, the reviewing court examined Canon 5, DR 5—102 of the Illinois Code of Professional Responsibility, which provides:

> "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5—101(B)(1) through (4)."

Here, there is no showing that counsel is within the exceptions. As to the facts in that case, the court said:

> "Here counsel was acting as an investigator and should have been aware that in so doing he created the possibility that he might have to testify. Having placed himself in this potential problem, he certainly cannot claim the 'surprise' involved by *Kuczynski*. We do not find any error in the trial court's ruling." 41 Ill. App. 3d 837, 854 354 N.E.2d 448, 462.

■■ So far as can be ascertained from the record any impeachment of the witness Hunter would necessarily be upon testimony of defense counsel. We conclude that upon such facts the opinion in *Attaway* controls and we cannot say that the trial court abused its discretion.

■■ Defendant argues that it was error to refuse to direct a verdict for insufficient evidence to prove guilt of the knowing delivery of MDA. The argument is founded upon the evidence that it could not be shown which packet defendant gave to Hunter and which he gave to Donini. The laboratory tests identified the contents of one packet as MDA. The test of the second packet was by a different less detailed method described as:

> "It is not a conclusive test. It is like an instrumental screening test."

The only evidence upon the issue, however, is that the contents of the packets of MDA were taken from a small vial in immediate succession at one time. We conclude that the evidence is sufficient to support the verdicts.

■■ Defendant argues, in the alternative, that one of the charges of delivery of MDA should have been dismissed as the evidence shows the substances were made up and delivered as part of one transaction. Each

delivery was to a different individual. In *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, it was held that separate convictions with concurrent sentences are proper:

> "[W]hen more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, * * *." (66 Ill. 2d 551, 566, 363 N.E.2d 838-845.)

Here, the evidence showed delivery of separate packets to different individuals. There is no error within the rule of *King*.

■■ Defendant argues that it was reversible error to refuse to instruct upon circumstantial evidence in the full text of Illinois Pattern Jury Instructions, No. 3.02 (1968), including the second paragraph:

> "[You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence.]"

The Committee note to such instruction states that the second paragraph should be given only when the evidence of guilt is "entirely" circumstantial. The courts have adopted such statement. (*People v. Brooks* (1972), 7 Ill. App. 3d 767, 289 N.E.2d 207; *People v. Hines* (1975), 28 Ill. App. 3d 976, 329 N.E.2d 903.) The evidence for both the prosecution and the defense is entirely testimonial and the defendant's statement at the instruction conference does not adequately suggest that there is, in fact, any circumstantial evidence in the record. We find no error.

The judgment is affirmed.

Affirmed.

GREEN, P. J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

I would reverse and remand for a new trial. In my opinion, erroneous evidentiary rulings made by the trial court were of sufficient magnitude to deprive the defendant of a fair trial.

It was improper and impermissible to permit the People to introduce testimony that defendant had stated he could obtain controlled substances in large quantities and that he offered to supply such controlled substances for subsequent sale. The majority opinion strains to bring this testimony within the stated exception of *Cole*. There is a substantial factual distinction. In *Cole*, the testimony admitted was by a government agent that the defendant had twice *previously sold* narcotics to the agent. In this case, the admission of testimony that the defendant stated that *he could subsequently* supply drugs shows only a willingness

to make a future sale and tends to establish absolutely nothing with reference to the charge on trial. The evidence was admitted to establish a continuing propensity to commit crime and as such it was within the proscription of *Chronister*. See *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.

Defense counsel sought to question the State's witness and informer Hunter, and asked Hunter, "Do you remember a conversation you had in my office with me June 28th, 1976?" The trial court sustained a general objection to that question and that general line of questioning. No reason was given for the ruling sustaining the objection. The general objection, of course, goes only to the question of relevance and materiality. Clearly, the defendant was entitled to impeach the witness Hunter by any prior inconsistent statement. Indeed, Hunter was the only witness to testify as to the source of the PCP. Within the rule of *People v. Whitehead* (1976), 35 Ill. 2d 501, 221 N.E.2d 256, the defense counsel was erroneously prevented from impeaching or laying the foundation to impeach an important prosecution witness.