(No. 23956.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* IRA PAGE, Plaintiff in Error.

*Opinion filed February 18, 1937.*

WILSON, J., dissenting.

C. H. LINSCOTT, for plaintiff in error.

OTTO KERNER, Attorney General, and S. DONALD CROWELL, State's Attorney, for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Ira Page, whom we shall call the defendant, was indicted by the grand jury of Ogle county for the crime of assault with a deadly weapon with intent to do bodily injury. A jury found him guilty of a mere assault and he was fined $50. His conviction was affirmed by the Appellate Court for the Second District, and the cause is here for further review on writ of error.

Without permission, on October 6, 1934, Frank Simone and two companions entered upon defendant's land to hunt squirrels. They killed one squirrel, and defendant, who was at home, heard the shot. He and Jake Fassler at once set out in search of the hunters and in a short time came upon their parked automobile on a public highway near the west line of Page's land. Defendant came upon the hunters and asked who gave them permission to hunt upon his land, and they admitted that they were there without leave. The evidence is hopelessly in dispute as to what happened from then on. Defendant told them they were under arrest and seized Simone's gun and attempted to wrest it from him. He was unsuccessful, but in the course of the struggle the gun was discharged without harm. The hunters and defendant proceeded toward the boundary line, and defendant continued arguing and threatening to have them arrested for trespassing. Defendant says he placed one hand on Simone's gun and the other on his shoulder and marched him to the line fence, but this is disputed by the hunters, who testified that he merely walked along with them. About the time they reached the fence defendant

was joined by John, Paul and William Page, relatives of his who had heard the shot fired during the struggle over the shot-gun. The People's evidence shows that defendant was about to throw a rock at Simone, but was told not to by Fratello, one of the hunters. Defendant then turned and hurled the rock at Fratello. Simone then climbed the fence. Defendant obtained a club, went under the fence and struck Simone across the face with the club, rendering him unconscious. He then disarmed him. Defendant's version is that as they neared the road he asked Fassler to bring him "the club," and that Simone then jerked away from him, climbed the fence and fell into the ditch on the other side. Defendant pursued Simone, carrying the club under his right arm, and again took hold of him. In endeavoring to pull away, Simone again fell into the ditch, and defendant insists that the stock of the gun struck the ground, causing the barrel to hit Simone over the eye, knocking him unconscious. Defendant says that Fratello was hit by William Page with a club rather than by himself with a rock, and that this blow was struck while William Page was helping defendant in a struggle for the possession of Fratello's gun. It appears that William Page disarmed Fratello and took from him a revolver and his shot-gun. This witness also took Simone's revolver from him while he was unconscious. Defendant's witnesses claimed that the attack with the clubs was provoked by Simone thrusting his shot-gun through the fence and pointing it at defendant. There is evidence that profane language was freely used by defendant and the hunters alike.

In the view we take it is unnecessary to consider whether the verdict is supported by the evidence. An examination of the record shows that defendant was prejudiced at the trial by the introduction of irrelevant and immaterial testimony. Defendant was asked on cross-examination, over objection of counsel, if it was not a fact that he had had lots of trouble in the past and if he had not threatened to shoot

people who came onto his land. He was also asked if he had not, on the morning of October 8, 1934, two days after the alleged assault, in the presence of certain people, threatened to shoot any game warden who came on his farm. The facts of his difficulties with certain game wardens and sheriffs were then gone into in detail, over his objections. On his motion this testimony was ordered stricken at the close of all the evidence, and the jury was instructed to disregard it. These same game wardens testified for the People in rebuttal of the testimony of defendant's character witnesses. The testimony as to the threats was irrelevant and injected a collateral issue, to defendant's prejudice. The error was not cured by striking the testimony at the end of the trial and instructing the jury to disregard it.

On the cross-examination of Edward Nettz, a character witness for defendant, the following occurred.

"Q. Didn't you, on one of these occasions, state that you knew that Mr. Page had been having considerable trouble in the past in that connection? [Meaning with regard to hunters on defendant's farm.]

"Objection by Mr. Hanneken.

"The court: Overruled. He may answer.

"A. Not to my knowledge.

"Q. Did you ever hear of Ira Page being arrested?

"A. No, sir.

"Q. In any other case besides this one?

"A. No, sir.

"(Objection and motion to strike the answer were overruled.)

"Q. Didn't you say that he had been arrested in Dixon?

"A. No, sir.

"(Objection by defendant's counsel sustained.)"

Will Otto, another character witness, was asked, on cross-examination, if defendant had ever been in any trouble and replied that he had not. This same answer was elicited from defendant's third character witness, Ray Hedrick, and

in addition he·was asked if he had ever heard of defendant being arrested. He answered, "No."

The reputation of a person cannot be impeached by proof of particular acts. It must be by proving his general reputation for the particular matter or misconduct in question, to be bad. Neither on cross-examination nor in rebuttal of proof of good character can particular acts of misconduct be shown. (*People* v. *Anderson*, 337 Ill. 310, 332; *People* v. *Celmars*, 332 id. 113; *Aiken* v. *People*, 183 id. 215.) We held in *McCarty* v. *People*, 51 Ill. 231, that every man is presumed to be ready at all times to defend his general character but not his individual acts. Of those he must have due notice. The questions asked on cross-examination had no justification. Their tendency was to prejudice the jury against defendant. A person on trial charged with a particular crime is not required to defend against every possible aspersion which may be made against him but which is in no way connected with the issue to be determined. Where such aspersions appear in the record the question is not what a court of review may think of the defendant's guilt or innocence but what the jury would have done if the case had been submitted to them without those aspersions. We have often condemned the practice, in criminal cases, of asking improper questions for the purpose of creating in the minds of the jury a prejudice against the defendant, and judgments of conviction have been reversed for such conduct. (*People* v. *Anderson, supra; People* v. *Rogers,* 324 Ill. 224; *McCarty* v. *People, supra.*) We cannot say that defendant was not prejudiced by attempts to show that he was a quarrelsome individual, who had been arrested and had had previous trouble with trespassers on his land.

Over defendant's objection the witness Fratello was permitted to exhibit to the jury a scar on his head from being struck there when he was ejected from defendant's land. Defendant was not being tried for this assault, and

the exhibition of the scar was calculated to prejudice the jury. This could serve no useful purpose, since it was admitted that Fratello was struck on the head at the time, although defendant claimed his brother administered the blow.

Plaintiff in error was not convicted in that orderly manner which the law requires. The judgment of conviction is therefore reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE WILSON, dissenting:

I cannot concur in the holding of the opinion that the cross-examination of the character witnesses was improper. The great weight of authority, in my opinion, is the other way, and by the holding in this case, the right of cross-examination of a character witness is unduly limited. *State of Oregon* v. *Shull,* 71 A. L. R. 1498, and note.