THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD CORDER, Defendant-Appellant.

Third District    No. 79-852

Opinion filed December 23, 1980.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The defendant, Richard Corder, was charged by indictment with aggravated battery. Following a jury trial, he was found guilty as charged

and was sentenced to two and one half years of imprisonment to be served consecutive to his sentence in case number 79-CF-55.

On appeal, the defendant contends that the trial court erred in allowing the prosecution to cross-examine a defense witness concerning the defendant's reputation for a hot temper and his particular acts of misconduct where the defendant had not placed his reputation in issue. We affirm.

The defendant was charged with violating section 12—4(b)(6) of the Criminal Code (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(6)), in that he knowingly struck a correctional officer engaged in the execution of his duties. The defendant advanced the affirmative defense that he struck the victim, James Sprinkle, in self-defense. The State introduced the testimony of Sprinkle and a second correctional officer, Debra Luann Fields. Both witnesses stated that after a tug-of-war over a television set located in the day room of the county jail, the defendant wrenched the set from Sprinkle, passed it to another inmate, and struck Sprinkle in the left temple.

The defendant in his case-in-chief presented the testimony of four fellow inmates of which three witnessed the altercation. While their testimony tended to demonstrate that Sprinkle provoked the defendant's attack by initiating physical contact, the testimony was internally inconsistent. Further, their veracity was impeached by prior felony convictions.

The fifth and final defense witness was the Reverend Richard L. Brewer, a pastor of a local United Methodist Church, who also worked full time at the Peoria prison ministry. On direct examination, he stated that, based on his meeting with the defendant one day after the altercation, the defendant had a swollen face and two bumps on his head. The relevant portions of Reverend Brewer's testimony follows:

Defense counsel's direct examination:

"Q. And did you observe anything else at that time?

A. I observed a very—He was very upset.

MR. BRANDT: Objection. I ask that answer be stricken.

THE COURT: Overruled.

MR. PARKER: Q. Had you spoken to him prior to February 28?

A. I know Richard very well. I have known him for about a year and had almost daily conversations with him either on the phone or personally."

Cross-examination by the State's Attorney:

"Q. And I believe you characterized Mr. Corder as being quite upset?

A. Yes.

Q. Is that correct? And you have known Mr. Corder just about a year. And have you known him to have a hot temper?

MR. PARKER: Objection to that, Your Honor.

MR. BRANDT: Believe he brought out that, Your Honor.

MR. PARKER: First off, that was objected to.

MR. BRANDT: Well—

THE COURT: Overruled.

MR. BRANDT: Q. Mr. Corder has a pretty hot temper, doesn't he?

A. I wouldn't classify it as a hot temper. I would classify it as this. He had been in county jail at that point about six months. And under that kind of pressure, I notice with a lot of the men, including Richard Corder, the kind of helplessness and kind of impatience that takes place in their lives. I know that he is a man who can be very loud with his voice, but I don't necessarily classify that as temper.

Q. You wouldn't characterize it as a hot temper, but you would characterize it as an attitude resulting from the pressure of being incarcerated?

A. The pressure of several things. The pressure of his—of the first incident that put him in the county jail, which after he had his life back together, and now his life is falling apart, and you know, he vocalized that to me on a hundred occasions.

Q. In fact, you have seen him blow his top on one specific occasion—

MR. PARKER: I'll object to the form of the question and the substance.

THE COURT: Overruled.

MR. BRANDT: Q. It was right here in court, wasn't it?

A. I saw him give quite a heated speech in front of Judge Manning at one time, yes, sir.

Q. Pretty heated language was used, wasn't there?

A. I don't recall any profanities.

Q. Was this the same type of pressure that you are talking about that you do not characterize as a hot temper?

A. I have seen it in other men, if that is what you are asking me.

Q. I'm concerned with Mr. Corder, not really other men.

A. (nodded head up and down.)

Q. Is this a manifestation of this pressure that you are talking about, the manifestation that occurred in court a couple months ago?

A. Yes, I believe so."

On redirect examination, Reverend Brewer was asked to describe how the defendant was "putting his life back together." The State objected on the grounds that the questioning exceeded the scope of cross-

examination. The objection was sustained and the witness was excused. The jury found the defendant guilty of aggravated battery from which he now appeals, arguing that the trial court erred in allowing the State to cross-examine Reverend Brewer about the defendant's reputation for a hot temper and his particular acts of misconduct, where the defendant had not placed his reputation in issue.

■■ Initially, we can not agree with the defendant's contention that he had not "placed his reputation in issue." In the case at bar, the defendant's reputation or character was not an element of the offense of aggravated battery, so his character was not in issue. The defendant may, however, exercise his exclusive right to open the door to circumstantial evidence of character. The well-established rule in Illinois states that in criminal cases where the defendant's character is not an element of the offense, the State is barred from introducing such evidence to demonstrate the defendant's guilt circumstantially unless the defendant first chooses to establish his innocence inferentially by introducing proof of his good character. (*People v. Lewis* (1962), 25 Ill. 2d 442, 185 N.E.2d 254; *People v. Trimble* (1931), 345 Ill. 82, 177 N.E. 696.) The rationale for this rule is clear: although circumstantial character evidence is often probative because it leads to a reasonable inference that the defendant conformed to his demonstrated propensities, that probative value is outweighed by the dangers of undue prejudice, detraction from the issues, time consumption, and surprise. (McCormick's Handbook of the Law of Evidence §189, at 445 (2d ed. 1972).) Contrariwise, when the accused offers circumstantial evidence of good character to show that he was less likely to have committed the crime, the relevancy remains but the countervailing considerations are reduced. Thus, the defendant has the power to initiate the use of circumstantial character evidence to which the State may then respond in kind. 5 Callaghan's Illinois Evidence §10—24, at 279-80 (1965).

■■ In the case at bar, the defendant opened the door to circumstantial character evidence by way of Reverend Brewer's testimony. Reverend Brewer was ostensibly called by the defendant to testify to the degree of the injury suffered by the defendant. After describing the defendant's head wounds, he indicated that the defendant was emotionally upset. Reverend Brewer was then asked whether he had spoken to the defendant prior to the altercation. He answered that he had known the defendant for about one year and had almost daily conversations with him either personally or by telephone. The clear inference of this testimony was that the defendant was an extremely devout person who maintained close contacts with his minister. The testimony was offered to establish inferentially that the defendant, being such a devout individual, would not have attacked Officer Sprinkle without provocation.

Since we find that the defendant opened the door to the use of

circumstantial character evidence, the issue is whether the State exceeded the scope of cross-examination of Reverend Brewer when it inquired into (1) the defendant's reputation for having a bad temper and (2) a specific instance of the defendant's past misconduct, namely, a heated outburst in a circuit court.

■■■ Generally, cross-examination of a character witness is permitted to determine whether the witness has adequate knowledge of the defendant and his reputation. (*People v. Moretti* (1955), 6 Ill. 2d 494, 129 N.E.2d 709; *People v. Long* (1978), 65 Ill. App. 3d 21, 382 N.E.2d 327.) The scope of such cross-examination was defined in *People v. Page* (1937), 365 Ill. 524, 528, 6 N.E.2d 845, 847, where the court declared: "The reputation of a person cannot be impeached by proof of particular acts. It must be by proving his general character for the particular matter of misconduct in question, to be bad." The justification for excluding testimony concerning past misconduct is that it is unfair to force the accused to account for any past aspersions that are at most only circumstantially related to the issue at hand. In *People v. Greeley* (1958), 14 Ill. 2d 428, 152 N.E.2d 825, however, the court indicated that a cross-examiner may inquire whether the character witness has heard any disparaging rumors that were based on specific bad acts inconsistent with the good character vouched for by the witness. (See, *e.g., People v. Graves* (1978), 61 Ill. App. 3d 732, 378 N.E.2d 293; *People v. Hunt* (1971), 132 Ill. App. 2d 314, 270 N.E.2d 243; McCormick's Handbook of the Law of Evidence §191, at 456-57 n.73 (2d ed. 1972).) The rule as it presently stands can produce anomalous results because, while *Page* prohibits the prosecution from inquiring whether the witness knows of the defendant's past misconduct, the prosecution may reveal, according to *Greeley*, the same potentially prejudicial misconduct by asking whether the witness has heard any rumors that the defendant has committed such misconduct.

■■ Turning to the first contention, we find that the cross-examination of Reverend Brewer concerning the defendant's general reputation for a bad temper was proper. On direct examination, the defendant offered circumstantial character evidence showing that because he led such a virtuous life he struck the victim only upon extreme provocation. The State properly attempted to negate the inference of that character evidence by adducing general character evidence of the defendant's bad temper. Even assuming, *arguendo*, that the defendant had not opened the door to circumstantial character evidence, we cannot say that he was prejudiced by the cross-examination. Reverend Brewer's responses were at best equivocal. In fact, he denied that the defendant had a quick temper and attributed the defendant's behavior to the pressures of incarceration.

■■ In applying the *Greeley* rule to the defendant's second contention, we

find that the State exceeded the allowable grounds of cross-examination of a character witness when it asked Reverend Brewer whether he knew that the defendant had entered into a "heated" conversation with a circuit court judge several months before the present offense had occurred. Nevertheless, we find that such error was harmless because no prejudice resulted. Although Reverend Brewer testified that he was present when the defendant raised his voice before a circuit court judge, he stated that the defendant used no profanity. He also testified that the outburst was caused not by the defendant's bad temper, but from the frustrations of incarceration. Any implication of misconduct caused by the admission of this evidence was minor; further, Reverend Brewer's explanation for the outburst substantially diminished whatever prejudice was created. The doctrine of harmless error applies to cases such as the present where the error itself was unlikely to have contaminated the jury. *People v. Lindgren* (1980), 79 Ill. 2d 129, 141, 402 N.E.2d 238, 244; *People v. Butler* (1974), 58 Ill. 2d 45, 48-49, 317 N.E.2d 35, 37.

The evidence adduced at trial also supports the finding of harmless error. Both of the State's witnesses testified that after the defendant wrestled the television set away from the victim, the defendant delivered the first blow. On the other hand, the defendant's witnesses gave inconsistent renditions of the altercation. Furthermore, their veracity was impeached by prior felony convictions.

Accordingly, for the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

Affirmed.

BARRY and SCOTT, JJ., concur.