THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NORMAN HALL, Defendant-Appellant.

First District (3rd Division) No. 85—3030

Opinion filed August 12, 1987.

---

James J. Doherty, Public Defender, of Chicago (Michael Woloshin, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant Norman Hall was charged by indictment with murder (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), (2)) and armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2). After a bench trial he was found guilty of voluntary manslaughter (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(a)(1)). He was sentenced to 10 years in the Illinois Department of Corrections.

Defendant appeals and raises the following contentions: (1) the trial court denied defendant a fair trial where it deliberately rejected competent evidence of his good reputation for peacefulness and allowed the prosecution, over objection, to impeach defendant's reputation witness with evidence of specific bad acts; and (2) the trial court abused its discretion in sentencing defendant for voluntary manslaughter where it had improperly convicted him of armed violence, refused to consider mitigating factors appropriate to the nature of the offense, and relied on deterrence and defendant's refusal to admit guilt and persistence in his innocence as factors in aggravation of the offense.

For the reasons stated below, we affirm the judgment of the circuit court of Cook County.

The evidence at trial indicated the following. On July 19, 1984, defendant and his girlfriend, Loretta Williams, the victim, attended a wake for a friend, Foster Boyd's mother. Later that night, at about 10 p.m., defendant dropped off Loretta Williams at Boyd's house and defendant and Boyd went out drinking. At about 12:30 a.m. on July 20, 1984, defendant returned to Boyd's home. When there was no answer at the door, defendant drove to the apartment where he had lived with Williams for three years. Defendant found Williams asleep in their second-floor bedroom. After he entered the room, he shook her foot to wake her and let her know he was home. When she awoke, she asked defendant why he was home so late, where he had been and if he had been with another woman. Williams got out of bed and slapped defendant. Defendant and Williams struggled for a few minutes.

Williams then ran from the bedroom. Defendant reached for a .38 caliber revolver he kept in a file box on the bedroom dresser. Williams apparently was unaware that defendant kept a gun in the home. Defendant followed Williams into the hallway. He grabbed her right arm with his left hand as she stood in the doorway to the bathroom adjacent to the bedroom. Defendant placed the gun to Williams' throat and pulled the trigger.

Defendant then ran out of the apartment to his car, put the gun

under the front seat and drove away. He drove about one-half block and then returned to the apartment and called the police. He told the police that Williams was shot. When the police arrived at the apartment, defendant told them that he shot Williams. The police found the body of Williams lying across the bathroom threshold. The police recovered the gun from under the front seat of the car, where defendant had told them he left it. Defendant was arrested and given *Miranda* warnings. He told police that he shot Williams and that he was "tired of Loretta's shit." Defendant stated that he thought Williams had a knife. Later he stated that he knew she did not have a knife since she had left the bedroom only seconds before defendant.

Williams' autopsy report indicated that her death was caused by a gunshot inflicted within six inches of her throat. The autopsy also revealed several abrasions and bruises inflicted just prior to her death. During an interview with police after the shooting, defendant stated that he had loaded the gun by alternating blank shells and live shells. He also told police that he had drilled out a portion of the lead at the end of each bullet so that when the cartridge was fired, it would "mushroom" upon impact with anything.

## I

On appeal defendant initially contends that the trial court denied him a fair trial by rejecting competent evidence of his good reputation for peacefulness and allowing the State, over objection, to impeach his reputation witness with evidence of specific bad acts.

In his case in chief defendant called Robert McWhinnie to testify to defendant's reputation in the community for peacefulness. McWhinnie, an electronics technician, owned a store and had employed defendant full time as an outside service technician since he opened his store in 1978. In that position, defendant dealt with customers on a daily basis. McWhinnie testified that he had spoken to his customers and to defendant's co-workers regarding defendant. McWhinnie stated that defendant had an excellent reputation for peacefulness in the community.

On cross-examination the prosecution asked the witness the basis for his testimony concerning defendant's reputation for peacefulness. The witness again referred to the work defendant did, his appearance, and "the way he handled himself with customers." The prosecution asked McWhinnie whether he had ever talked to any of the customers or employees regarding defendant's reputation for peacefulness. Defense counsel objected on the basis that the witness need not talk to the people in the community specifically regarding

defendant's reputation for peacefulness. The court responded that whether defendant was a good television repairman was not at issue. The court asked the witness if he understood that he had been called to testify as to his knowledge of defendant's reputation for being a peaceful person, the basis of that knowledge, and whether he had ever asked anyone about that.

McWhinnie responded that he understood. He then testified that there were two incidents during the years that defendant worked for him that customers refused to let defendant into their homes because he was black. Rather than get upset, defendant would turn around and leave and find a telephone to call McWhinnie to tell him of the problem.

The prosecution then asked the witness if his opinion of defendant's peacefulness would change if he learned that defendant used to take .38 caliber bullets and drill "mushroom holes" in the top of them so they would expand on impact when he shot them into a human being. Defense counsel objected to the question as having no bearing on the witness' testimony. The court allowed the questioning to continue. The prosecution then asked the witness whether he knew that defendant had a gun and whether his opinion would change if he knew that fact. The witness responded negatively to both questions. The witness stated that he himself owned a gun. The prosecution began questioning McWhinnie regarding his ownership of a gun. Defense counsel again objected to the line of questioning. The court stated that the witness could testify as to the basis of his opinion of defendant's character.

Questioning resumed, and defense counsel again objected, stating that the prosecution's question regarding defendant's drilling holes in the top of bullets impermissibly related to a particular possible bad act affecting reputation. The court requested a sidebar. The prosecutor then withdrew the question. On redirect examination, the court sustained the State's objection to defense counsel's question concerning whether McWhinnie ever heard complaints about defendant not being peaceful.

On appeal, defendant asserts that the trial court ignored McWhinnie's testimony regarding defendant's reputation for peacefulness and considered only that portion of his testimony regarding defendant's work skills and habits. Further, defendant contends that the trial court impermissibly allowed the State to impeach McWhinnie with evidence of specific bad acts and improperly held that his testimony as to whether complaints were made of defendant was inadmissible. (*People v. Ford* (1974), 21 Ill. App. 3d 242, 315 N.E.2d 87.) Thus,

defendant contends, the record in this case rebuts the usual presumption that exists in a bench trial, that the trial judge considered only competent and relevant evidence. *People v. Pagan* (1972), 52 Ill. 2d 525, 537; *People v. Gilbert* (1977), 68 Ill. 2d 252, 258-59.

■■ ■ Defendant also notes that evidence of good reputation in the community offered by an accused must relate to the particular character trait involved in the offense charged, so that proof of a good reputation for that particular trait will render it unlikely that the accused is guilty of the offense charged. (*People v. Partee* (1974), 17 Ill. App. 3d 166, 308 N.E.2d 18.) Particular acts of misconduct cannot be shown on cross-examination or in rebuttal, for the reason that it is unfair to force an accused to account for any past misconduct which is unrelated or at most only circumstantially related to the issues at hand. (*People v. Page* (1937), 365 Ill. 524, 6 N.E.2d 845; *People v. Corder* (1980), 91 Ill. App. 3d 392, 414 N.E.2d 904; *People v. Hunt* (1971), 132 Ill. App. 2d 314, 270 N.E.2d 243.) Further, once a statement of good reputation is introduced into evidence, it may be supported by testimony that the witness never has heard anyone speak against the character of the accused regarding the particular trait involved. *People v. Savage* (1927), 325 Ill. 313, 156 N.E. 310.

In response the State asserts that the testimony of defendant's reputation was properly admitted into evidence and properly impeached. The State contends that the trial court did properly allow and consider testimony regarding defendant's reputation for peacefulness. Further, the State asserts, the court properly allowed cross-examination regarding the depth of McWhinnie's knowledge about defendant and defendant's reputation for peacefulness, after defendant had placed this character trait in issue. *People v. Corder* (1980), 91 Ill. App. 3d 392, 414 N.E.2d 904; *People v. Hunt* (1971), 132 Ill. App. 2d 314, 319, 270 N.E.2d 243.

The State attempts to distinguish *People v. Page* (1937), 365 Ill. 524, 6 N.E.2d 845, relied on by defendant. *Page*, the State asserts, stands for the rule against cross-examining a character witness with matters that have no relevance to the issues in the case, solely for the purpose of prejudicing the jury against the defendant. In the instant case, the State asserts, the cross-examination of McWhinnie regarding the specific acts of defendant's drilling out the tops of the bullets was ''more than circumstantially'' related to the issues in the case, and therefore was properly allowed.

If the court finds that the cross-examination was improper, the State contends, then any resulting error is harmless as no prejudice resulted. (*People v. Pagan* (1972), 52 Ill. 2d 525, 538.) The State as-

serts that the trial court gave little weight to McWhinnie's impeachment testimony regarding defendant's reputation for peacefulness. For instance, when the prosecution continued cross-examination about the tampered-with bullets, the court called a sidebar and the prosecution withdrew the line of questioning. In addition, when defense counsel in his closing argument began to discuss the tampered-with bullets in the context of impeaching McWhinnie regarding defendant's peacefulness, the trial judge stated, "I don't care," to which defense counsel responded, "Okay, that's exactly our point."

The State also distinguishes *People v. Hampton* (1981), 96 Ill. App. 3d 728, 422 N.E.2d 11, and *People v. Ford* (1974), 21 Ill. App. 3d 242, 315 N.E.2d 87, cited by defendant. In both *Hampton* and *Ford*, the appellate court found that in finding the defendant guilty of the offense charged, the trial court must have relied on incompetent or improper hearsay evidence. The State points out that in the instant case the trial judge did not hear any new evidence from McWhinnie's cross-examination, as Detective Dwyer and defendant had also testified during trial to the existence of a gun and tampered-with bullets. The State contends that the trial court found defendant guilty based on its assessment of the witness' credibility and on all of the evidence.

■ We find that the prosecution impermissibly impeached McWhinnie regarding defendant's reputation for peacefulness by referencing specific bad acts, *i.e.*, his drilling the bullets. (*People v. Greeley* (1958), 14 Ill. 2d 428.) We find, however, that the trial court gave little weight to the evidence regarding the gun and drilled bullets, and properly considered the competent and relevant evidence. The record fails to rebut the presumption that exists in a bench trial that the trial judge considered only competent and relevant evidence in reaching the verdict. (*People v. Shore* (1984), 129 Ill. App. 3d 443, 472 N.E.2d 512; *People v. Ford* (1974), 21 Ill. App. 3d 242, 315 N.E.2d 87.) Defendant suffered no prejudice, and the error committed did not amount to harmful error.

■ We also find that the trial court properly sustained the State's objection to defense counsel's question during redirect examination regarding whether McWhinnie had heard specific complaints about defendant, as a witness who has testified to the good reputation of a defendant cannot be questioned as to particular bad acts by the defendant. (*People v. Redmond* (1972), 50 Ill. 2d 313; *People v. Greeley* (1958), 14 Ill. 2d 428.) Additionally, the evidence regarding the drilled bullets was admitted through other witnesses and this information once admitted had no further effect when used to cross-examine McWhinnie.

## II

Second, defendant contends that the trial court abused its discretion in sentencing him for voluntary manslaughter where it had improperly convicted him of armed violence, explicitly refused to consider mitigating factors appropriate to the nature of the voluntary manslaughter offense, and relied on deterrence and defendant's refusal to admit guilt and his persistence in his innocence in aggravation of the offense. We note that at the close of trial, the court found that the murder and armed violence charges brought against defendant merged into one count and the court found defendant guilty of voluntary manslaughter.

## A

■ Defendant first asserts that the trial court abused its discretion in convicting him of armed violence and merging the conviction into his conviction for voluntary manslaughter. Voluntary manslaughter according to its common law and statutory definition is an unpremeditated crime induced by sudden fear or duress and committed without time for proper reflection. It requires that the defendant's act be motivated by a sudden and intense passion resulting from a serious provocation. (*People v. Alejos* (1983), 97 Ill. 2d 502; Ill. Rev. Stat. 1983, ch. 38, par. 9—2(a).) Defendant contends that the trial court's merger of convictions suggests that the trial court believed that defendant's use of a weapon was not unpremeditated. Therefore, defendant asserts, the armed violence conviction was improper and must be vacated. Further, as the trial court may have been influenced by the improper conviction in imposing a sentence on the remaining voluntary manslaughter conviction, defendant contends that this cause must be remanded for a new sentencing hearing. *People v. Green* (1980), 83 Ill. App. 3d 982, 404 N.E.2d 930.

■ In response the State contends initially that any issue concerning defendant's conviction as it pertains to armed violence is nonappealable for two reasons. First, defendant failed to object during conviction and sentencing and therefore waived this issue on appeal. (*People v. Smith* (1975), 28 Ill. App. 3d 908, 911, 329 N.E.2d 896.) Second, sentence was not passed on defendant for armed violence. An issue is nonappealable unless it has reached final judgment. Since an issue does not reach final judgment until sentence is passed, this issue raised by defendant is nonappealable. *In re J.N.* (1982), 91 Ill. 2d 122, 127.

■ Assuming that the court considers this issue, the State contends that the trial court properly convicted defendant. The State as-

serts that the trial court recognized that a finding of voluntary manslaughter cannot be used as the underlying felony in an armed violence charge (*People v. Alejos* (1983), 97 Ill. 2d 502, 513), and thus properly convicted defendant of voluntary manslaughter.

Further, the State contends that the record fails to indicate that the trial court was influenced by the armed violence charge when the voluntary manslaughter sentence was imposed. As it was impossible to merge a Class X felony (armed violence) into a Class 1 felony (voluntary manslaughter), the State asserts, the trial court properly looked to the sentencing statute for Class 1 felonies (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(4)).

Further, the State asserts that there was no abuse of discretion, as the trial court properly considered the circumstances surrounding Loretta Williams' death. The sentence was proper in light of the serious nature of the crime, the fact that Williams was unarmed at the time of the shooting, that defendant knew she was unarmed, and that defendant shot Williams from a distance of less than six inches. Additionally, as the 10-year sentence is well below the maximum 15 years, the length of sentence fails to indicate that the armed violence charge influenced the voluntary manslaughter sentence.

Assuming that this issue is appealable (*People v. Caballero* (1984), 102 Ill. 2d 23, 51, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 298, 105 S. Ct. 362), we agree with the State and find that the trial court properly convicted defendant of voluntary manslaughter (*People v. Alejos* (1983), 97 Ill. 2d 502; *People v. Taylor* (1985), 139 Ill. App. 3d 779, 487 N.E.2d 767). The record fails to indicate that the court was influenced by the armed violence charge in convicting and sentencing defendant for voluntary manslaughter. We find no abuse of discretion.

B

Second, defendant asserts that the trial court abused its discretion in explicitly refusing to consider mitigating factors appropriate to the nature of the voluntary manslaughter offense. Those factors, inapplicable to offenses resulting from deliberation, are particularly applicable to voluntary manslaughter and other unpremeditated offenses. Under the sentencing statute, those factors include the following: the defendant acted under a strong provocation; there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense; and the defendant's criminal conduct was the result of circumstances unlikely to recur. (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—5—3.1(a)(3), (4), (8).) Defendant notes that the provocation factor is usually reserved for physical assault,

mutual quarrel or combat, adultery, or other comparable situations. *People v. Griffiths* (1983), 112 Ill. App. 3d 322, 445 N.E.2d 521.

Defendant also asserts that it was error for the trial court, in imposing a sentence for the voluntary manslaughter conviction where the defendant originally had been charged with murder, to consider that the trier of fact removed all mitigating or aggravating factors in finding the lesser offense. (*People v. Hammock* (1979), 68 Ill. App. 3d 34, 385 N.E.2d 796.) The language of the trial court which defendant alludes to apparently is the following, which the court expressed at the sentencing hearing: "Credit has already been given to Mr. Hall for those mitigating factors that reduce this crime down from murder to voluntary manslaughter and it is not the intent of this Court to let him use those chips twice."

In response the State asserts that the trial court properly considered all relevant factors and commented during the sentencing hearing on the determinative factors. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(b).) Factors properly considered in sentencing include the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) Additionally, the court may consider the stimuli which motivated the conduct (*People v. Lomas* (1981), 92 Ill. App. 3d 957, 962, 416 N.E.2d 408) and the degree of harm to the victim even in a crime where harm is implicit (*People v. Lampton* (1982), 108 Ill. App. 3d 41, 47, 438 N.E.2d 915, 919). Primary factors in sentencing, however, are the gravity of the offense and the circumstances surrounding its commission. (*People v. Duncan* (1981), 97 Ill. App. 3d 896, 899, 424 N.E.2d 67, 69.) The State also notes that a sentence is within the province of judicial discretion and will not be altered on review absent an abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 153.

In this case, the State asserts, the court properly considered mitigating as well as aggravating factors. For instance, the court considered defendant's lack of a criminal record as a substantial mitigating factor. This factor alone, however, was not sufficient to elicit a minimum sentence. (See *People v. Martinez* (1972), 4 Ill. App. 3d 1072, 283 N.E.2d 268; *People v. Odum* (1972), 3 Ill. App. 3d 538, 547, 279 N.E.2d 12.) The court also properly considered whether each element of the offense was present. (*People v. Tolliver* (1981), 98 Ill. App. 3d 116, 424 N.E.2d 44.) For example, the court properly considered the provocation element when it found that, although provocation was present and brought a conviction of voluntary manslaughter instead of murder, no grounds for excusal existed. Therefore, the trial court,

in its discretion, gave the provocation factor relatively little weight. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154.

■■■ We find that the trial court erred in stating that it would not consider for purposes of sentencing those mitigating factors which reduced the murder charge to voluntary manslaughter. (*Cf. People v. Hammock* (1979), 68 Ill. App. 3d 34, 385 N.E.2d 796.) However, we find that the court properly looked to mitigating factors such as provocation and defendant's lack of a criminal record, in addition to aggravating factors, including the seriousness of the crime, and defendant's credibility and demeanor, in handing down the sentence. We find that the trial court acted within its discretion in imposing a 10-year sentence. (*People v. Gallardo* (1983), 112 Ill. App. 3d 764, 445 N.E.2d 1213.) Therefore, we find that the error committed was harmless and fails to mandate a new sentencing hearing.

## C

■■■ Third, defendant contends that the court abused its discretion where it relied on defendant's refusal to admit guilt to the offense charged and his persistence in his innocence of that charge as a factor in aggravation during sentencing. Defendant asserts that the trial court improperly characterized defendant's invocation of his right against self-incrimination as "lack of remorse" when it was sentencing defendant. Defendant asserts that the only way he could have expressed remorse, "a deep torturing sense of guilt felt over a wrong *** done," (Webster's New World Dictionary 1202 (2d ed. 1978)) at trial was by the affirmative act of admitting his guilt.

Defendant contends that an absence of remorse can be inferred only when the record is silent regarding this issue. Allowing such an inference, however, would invite judicial abuse and a disregard for defendant's constitutional rights. (*People v. Sivels* (1975), 60 Ill. 2d 102; *People v. Moriarty* (1962), 25 Ill. 2d 565.) Defendant contends that a more severe sentence cannot be imposed merely because a defendant persists in his claim of innocence throughout the proceedings against him. (*People v. Griffiths* (1983), 112 Ill. App. 3d 322, 445 N.E.2d 521.) Defense counsel notes that defendant showed remorse by "calling himself in" to notify police of the shooting. Additionally, McWhinnie testified that when he visited defendant at the police station on July 20, 1984, that defendant started crying after McWhinnie asked him what had happened.

Defendant also asserts that in determining whether sentencing was improperly influenced by defendant's failure to admit guilt following conviction, this court should look to whether the trial court in-

dicated expressly or impliedly that there would be better treatment on sentencing if defendant abandoned his claim of innocence. If there was such an indication, then the sentence likely was improperly influenced by defendant's persistence in his innocence. (*People v. Byrd* (1986), 139 Ill. App. 3d 859, 487 N.E.2d 1275; *People v. Speed* (1984), 129 Ill. App. 3d 348, 472 N.E.2d 572.) We note that while defendant cites the law in support of this proposition, he fails to allege that the trial court in this case made such an indication regarding varying treatment toward defendant.

In response the State contends that a lack of remorse is part of a defendant's demeanor and was properly considered by the trial court in this cause as an aggravating factor in sentencing. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 493; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) The State acknowledges that a defendant's refusal to admit guilt cannot be used as an aggravating factor. The State contends the instant defendant's "lack of contrition" was not to be construed as a refusal to admit guilt, but rather as a proper comment on his demeanor. *People v. Singleton* (1984), 124 Ill. App. 3d 386, 400, 464 N.E.2d 624, 632.

The State asserts that the judge also properly considered defendant's credibility. The State points to the court's finding that the written statement signed by defendant shortly after the offense was committed was more credible than defendant's testimony at trial. The written statement, transcribed by a court reporter and signed by defendant, indicated that defendant shot Williams. Defendant's testimony at trial indicated that defendant was unaware of who shot the victim.

We agree with the State and find that the trial court properly considered defendant's apparent "lack of contrition" as part of his demeanor. (*People v. Singleton* (1984), 124 Ill. App. 3d 386, 464 N.E.2d 624.) The trial judge is in a far better position to evaluate the credibility and demeanor of a defendant than a court of review. (*People v. Kloiber* (1981), 95 Ill. App. 3d 1061, 420 N.E.2d 870.) For that reason, the trial judge's decision with regard to sentencing is entitled to great deference and weight and a rebuttable presumption exists that the sentence he imposes is a proper one. (*People v. Perruquet* (1977), 68 Ill. 2d 149.) We find that the evidence in the instant case fails to rebut that presumption, and the trial court properly considered demeanor in sentencing defendant. Further, we find that the record fails to show that the court would have given defendant better treatment if he abandoned his claim of innocence.

### D

 Finally, defendant asserts that the trial court's reliance on deterrence as a factor in aggravation of voluntary manslaughter, an unpremeditated offense, was a further abuse of its discretion. Defendant contends that the record rebuts the presumption that the trial court considered relevant factors in aggravation and mitigation, and improperly relied on deterrence in the belief that such reliance was proper. (*People v. Gilbert* (1977), 68 Ill. 2d 252; *People v. Hampton* (1981), 96 Ill. App. 3d 728, 422 N.E.2d 11.) Defendant therefore seeks to have his conviction for armed violence vacated, his sentence for voluntary manslaughter vacated, and the cause remanded for re-sentencing for voluntary manslaughter before a different trial judge. Alternatively, defendant requests that this court reduce the sentence pursuant to Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)).

The State responds that the record supports the trial court's proper balancing of factors. (*People v. Piontkowski* (1979), 77 Ill. App. 3d 994, 996, 397 N.E.2d 36.) Further, the State contends that *People v. Alejos* (1983), 97 Ill. 2d 502, does not stand for the proposition, as defendant asserts, that deterrence cannot be considered as an aggravating factor for voluntary manslaughter. Rather, *Alejos* holds that an armed violence charge can no longer be predicated on voluntary manslaughter. (97 Ill. 2d 502, 513.) *Alejos* does not affect the aggravating statute, which lists deterrence as a factor applicable to voluntary manslaughter. Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(a)(7).

In any event, the State asserts that the trial court did not base its sentencing on deterrence. Rather, the trial judge, as a member of society, was impressing upon defendant and the rest of society that voluntary manslaughter is a serious crime. (*People v. Reese* (1984), 121 Ill. App. 3d 977, 990, 460 N.E.2d 446.) The State contends that the court also properly considered the severity of the crime. The State notes that *People v. Knowles* (1979), 70 Ill. App. 3d 30, 388 N.E.2d 261, cited by defendant, is distinguishable from the instant cause. *Knowles* held that a sentence will be reviewed when the trial court acknowledged that the *sole* purpose of imprisoning the defendant was to deter others. In the instant case the trial judge considered deterrence as only one of several factors in determining a proper sentence.

We acknowledge defendant's assertion that an unpremeditated homicide is neither as serious an offense nor as likely to be deterred by threat of punishment as a killing which results from planned criminal acts. (*People v. Alejos* (1983), 97 Ill. 2d 502.) However, we agree with the State and find that the trial court properly considered deterrence as one of several aggravating factors, including the nature and

seriousness of the offense, the effect of such an offense on society, and defendant's demeanor and apparent lack of remorse. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93; *People v. Cox* (1980), 82 Ill. 2d 268, 280.) There was no abuse of discretion.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNAMARA, P.J., and WHITE, J., concur.