THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN PICKENS, Defendant-Appellant.

First District (3rd Division)   No. 1—93—3790

Opinion filed June 21, 1995.—Rehearing denied August 11, 1995.

Patricia Unsinn, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Kim A. Novi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

After a jury trial, defendant, Kevin Pickens, was found guilty of first degree murder and was sentenced to 40 years in prison. Defendant appeals this conviction and sentence. Defendant contends that: (1) the prosecutor argued in closing that the jury could consider defendant's status as the accused as a motive for defendant to lie, thus denying him due process; (2) the prosecution bolstered its wit-

nesses; (3) the prosecutor inflamed the jury during closing arguments by describing defendant as an assassin; (4) unreliable victim impact evidence denied defendant due process; and (5) the trial court did not accurately assess mitigating factors during sentencing and thus his sentence should be reduced. We affirm.

Both Andrew Claborn and Ricky Atterberry lived in a two-level apartment complex in Harvey, Illinois. On the evening of September 23, 1989, defendant was visiting Atterberry in his apartment and Charles Broughton was visiting Claborn. Defendant, who was dating Claborn's mother, later stopped by Claborn's apartment to see if she was home. Broughton took the opportunity to ask defendant to pay for his broken windshield, which he claimed defendant broke. Defendant said he would not pay and they argued about a minute after which defendant left only to return with a rifle. With rifle in hand, defendant challenged Broughton to make him pay for the windshield now. Claborn intervened at that point and asked defendant to leave which defendant did. Subsequently, Claborn and Broughton went to the liquor store. When they returned 10 minutes later, Broughton saw defendant in the parking lot and again requested payment for his windshield. Defendant left the parking lot and ran upstairs to the balcony of Atterberry's second-floor apartment. Defendant then resumed the argument with Broughton, who was still standing below.

Ricky Atterberry observed the argument from his apartment on the second floor and Claborn observed it from the parking lot standing next to Broughton. Atterberry and Claborn both testified that defendant said he was going to kill Broughton and Broughton told him to go ahead. They saw defendant produce a rifle, aim the rifle over the balcony, and fire at Broughton. Defendant then fled with the rifle. Broughton, who was unarmed, died of a gunshot wound to the head. The police arrived five minutes later and unsuccessfully searched for the defendant. He was eventually stopped in Tennessee and extradited back to Illinois.

At trial, Rachel Mahan testified she was sitting in a car waiting for a friend when she saw four men arguing. Two of the men were on the ground and two were on a balcony. One of the men on the balcony said "I'll pop you," to which a man on the ground said "go ahead." She looked up and saw a man leaning over the balcony, pointing a rifle, and firing. Then she saw one of the men below fall to the ground.

Defendant testified that he saw Claborn, Broughton, and three other men he did not know standing under the balcony. Defendant got the rifle and was holding it to his side pointing downward when someone threw an object the size of a brick at him. Defendant testified he unintentionally fired when he reacted to the object being thrown.

Defendant's first contention is that the prosecutor, during closing statement, argued that the jury was judicially authorized to consider that defendant's status as the accused furnished a motive to lie. The prosecutor argued:

> "Of all the witnesses you have heard, there is only one person who has a motive to lie, and that is Kevin Pickens, because at this moment he is faced with a charge he does not want to face.

> \* \* \*

> Ladies and Gentlemen, shortly you will be instructed by his Honor, Judge Houtsma, as to what the law is. You will be instructed to follow it as to what the law is. He will tell you certain things and I ask that you pay close attention to him. He will tell you that you should bring in your life experience into this courtroom, everything that you have learned during your life, you don't leave it out there, you bring it in, that is called common sense. You also bring in other things, the ability to look and to judge credibility of witnesses, the ability to observe a witness testifying, to determine whether they are telling the truth or a lie. There are other things you should consider during the witnesses' testimony, their interest, their bias. As stated before, there is only one person that has an interest in lying."

The trial court later instructed the jury to judge defendant's testimony in the same manner as that of any other witness. Illinois Pattern Jury Instructions, Criminal, No. 1.02 (2d ed. 1981) (hereinafter IPI instruction).

■ Attorneys may remark upon the credibility of witnesses during closing argument, provided the remarks are based upon facts on the record or reasonable inferences therefrom. (*People v. Ramey* (1992), 151 Ill. 2d 498, 534, 603 N.E.2d 519, 534.) Here, however, the prosecutor clearly implied that the defendant should be presumed to be a liar simply because of his status as a defendant. We find these remarks to be improper. (See *People v. Ellis* (1992), 233 Ill. App. 3d 508, 510-11, 599 N.E.2d 498, 501.) We do not condone the prosecutor's remarks and strongly advise prosecutors to refrain from making such implications in the future.

Defendant failed to object to the prosecutor's argument and did not raise this issue in a written post-trial motion; therefore, we will reverse only if the remarks constituted plain error. (See *Ellis*, 233 Ill. App. 3d at 510, 599 N.E.2d at 500.) The plain error rule is appropriate where the error adversely affected the right of the defendant to a fair trial or where the evidence is closely balanced. (*People v. Mullen* (1990), 141 Ill. 2d 394, 401-02, 566 N.E.2d 222, 226.) Improper prosecutorial remarks do not demand a reversal of a defendant's convic-

tion unless they were a material factor in that conviction. (*People v. Sheppard* (1990), 193 Ill. App. 3d 401, 403, 549 N.E.2d 971, 973.) The impropriety of the prosecutor's comments must be considered in conjunction with the evidence properly presented against the defendant. *People v. McNeal* (1987), 160 Ill. App. 3d 796, 803, 513 N.E.2d 897, 902.

We find that these remarks do not rise to the level of plain error. The evidence against the defendant was not closely balanced. The State had three witnesses testify that defendant aimed the rifle in Broughton's direction and shot him. Two of the witnesses, Claborn and Atterberry, were defendant's friends. The other witness was an independent eyewitness with no bone of contention against the defendant. These witnesses also contradicted defendant's testimony that there were three men besides Claborn and Broughton in the parking lot. Furthermore, no brick-like object was found in the area. The jury when confronted with this evidence could well believe that defendant's version of events was not credible. After reviewing the record, we do not find that the evidence was closely balanced.

Defendant argues that by referring to the IPI instruction at the time the prosecutor was making the improper remarks, the jury was left with the impression that the court directed them to consider the defendant's status as the accused when judging credibility. However, the trial court had instructed the jury that closing arguments were not evidence. Any confusion the jury may have had was cured when the trial court gave the jury the IPI instruction. The trial court also reminded the jury again after closing arguments that the defendant was presumed innocent unless it found that the State from the evidence presented had proven him guilty beyond a reasonable doubt. We cannot say that absent the prosecutor's improper remarks the outcome of the trial would have been different. The defendant, therefore, was not deprived of a fair trial.

■ Defendant's second contention is that the prosecutor unfairly bolstered the State's witnesses by unsupported argument stating that their testimony was consistent with statements they made to the police on the date of the offense. Prior consistent statements to corroborate a witness' trial testimony are inadmissible, except to rebut an inference of recent fabrication or that the witness has a motive to testify falsely, and the witness gave the prior statement when a motive did not exist. (*People v. Emerson* (1983), 97 Ill. 2d 487, 500, 455 N.E.2d 41, 47.) At trial, each eyewitness testifying for the State not only testified about what he or she observed but also testified he or she spoke to the police after the murder. Officer Patterson testified that he arrived at the scene within a few minutes of the shooting and

then spoke to the witnesses. Detective Hinkle also testified he took the statements of three witnesses and later they identified defendant out of an array of photos as the suspect. The substance of the conversations between the eyewitnesses and the police officers was not revealed. The prosecutor, however, argued to the jury that on that night, the witnesses "went to the police officers and told their story of a murderer who was at that time on the loose with a rifle, who had just moments earlier shot and killed a person." Defendant claims this argument was error because it unfairly bolstered the testimony of the witnesses by implying their statements were consistent with trial testimony.

Defendant admits this issue was not preserved for review. Error in the admission of evidence is waived for purposes of appeal unless there is an objection made during the trial and the error is specified in the defendant's motion for a new trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) Defendant asks that we consider the merits of this issue because the plain error rule is applicable. (See 134 Ill. 2d R. 615(a).) Plain error provides a limited exception to the waiver rule. The plain error rule is appropriate where the error adversely affected the right of the defendant to a fair trial or where the evidence is closely balanced. (*Mullen*, 141 Ill. 2d at 401-02, 566 N.E.2d at 226.) After reviewing the record, we find that the evidence was not closely balanced and the defendant received a fair trial.

The prosecutor's statements about what the State's eyewitnesses had previously told the police were improper. We find, however, that the error was harmless due to the overwhelming evidence of defendant's guilt. Defendant admitted to shooting Broughton. The State had three eyewitnesses who corroborated each other and whose version of the shooting contradicted the defendant's self-defense and accidental shooting claims. Two of these witnesses were the defendant's friends. The third witness had no ties to either the defendant or Broughton. She testified only two men, in contrast to defendant's claim that there were five men, were under the balcony that evening. All three eyewitnesses saw defendant aim at Broughton before shooting. None of the witnesses testified they saw someone throw something at defendant. In addition, no brick-like object was found at the scene, casting further doubt on defendant's testimony. Under these circumstances, the prosecutor's remarks, bolstering the credibility of the State's eyewitnesses, did not sway the jury toward a different outcome. The error committed by admitting the prosecutor's closing arguments, therefore, was harmless and not sufficient to require a new trial.

■ Defendant's third contention is that the characterization of defendant as an assassin during closing arguments inflamed the jury and denied him a fair trial. The prosecutor argued:

> "There is no worse crime than murder and in this case I would call this case an assassination, because how does an assassin work in a case? First of all, an assassin is going to use a rifle, a high powered rifle, and you heard the medical expert testify about the shot, the energy, the high energy and how it destroyed the brain tissue, the cerebellum and all those medical terms. What else would an assassin use? An assassin would get up high, shoot from high down low, wait until his prey, his target is unarmed and defenseless and waits until he gets up close before he fires that fatal shot. And what else would an assassin do? He would aim for the head, an instantly fatal shot. That is what a person does when he does something intentionally, an assassin. And what else does an assassin do, someone guilty of first degree murder, he flees the jurisdiction and ditches the murder weapon, and that is what happened in this case."

Defendant claims that these remarks were intended to bring to the jurors' minds the image of the assassination of a defenseless President Kennedy as Lee Harvey Oswald fired on the motorcade below. By characterizing the defendant as an assassin, defendant claims the prosecutor was not trying to persuade the jury that the evidence proved the shooting was intentional and unjustified but rather to tarnish defendant with jurors' memories of infamous assassins.

Prosecutors may comment on facts in evidence or reasonable inferences therefrom. (*People v. Franklin* (1990), 135 Ill. 2d 78, 100, 552 N.E.2d 743, 753.) A prosecutor, however, may not attempt to inflame the passion of the jury or arouse the prejudice of the jury against the defendant. (*People v. Manley* (1991), 222 Ill. App. 3d 896, 911, 584 N.E.2d 477, 489.) An assassin is "a murderer." (Webster's II New Riverside University Dictionary 130 (1988).) Thus, characterizing defendant as an assassin was based on the evidence as testified to by Mahan, Atterberry and Claborn. Furthermore, we do not find the comment so inflammatory as to result in substantial prejudice to the defendant. Defendant, therefore, was not denied a fair trial due to the prosecutor's characterizing defendant as an assassin.

■ Defendant's fourth contention is that the court received unreliable victim impact evidence at his sentencing hearing, thus denying defendant due process. The victim's mother, Emma Broughton, told the trial court how the murder affected her family. She said that since the murder her husband's blood pressure and blood sugar had risen. Mr. Broughton's employer was talking about laying him off and according to his doctor, Mr. Broughton's risk for stroke increased

since the murder. Defendant objects to the statements about Mr. Broughton's health and job status because no causal connection was established between defendant's conduct and Mr. Broughton's physical ailments or the fact that his job was in jeopardy.

Trial courts weigh all factors in mitigation and aggravation of which the victim impact statement is a factor. (*People v. Pavlovskis* (1992), 229 Ill. App. 3d 776, 784, 595 N.E.2d 587, 593.) Relevant and reliable victim impact statements are admissible during sentencing. (*Pavlovskis*, 229 Ill. App. 3d at 782, 595 N.E.2d at 591; Ill. Rev. Stat. 1989, ch. 38, par. 1005—4—1(a)(7).) In sentencing hearings, rigid rules of evidence need not be followed and hearsay evidence is admissible. (*People v. Henderson* (1976), 39 Ill. App. 3d 1065, 1069, 351 N.E.2d 231, 234.) We find no error in admitting Ms. Broughton's statement about Mr. Broughton's health and job status. Therefore, defendant was not denied due process when Ms. Broughton's entire impact statement was admitted.

■ Lastly, defendant requests this court to reduce his sentence to a minimum term of imprisonment because he claims the trial court did not consider his rehabilitation potential or accurately assess the mitigating circumstances of the offense. First degree murder is punishable by statute to a term of imprisonment between 20 and 60 years. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1).) A sentence will not be altered on review absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 884.) The 40-year sentence imposed by the trial court did not constitute an abuse of discretion.

The trial court, unlike a court of review, has the opportunity to consider many factors which are not readily discernible from the record. That is why the trial court's decision with regard to sentencing is entitled to great deference. (*People v. Hall* (1987), 159 Ill. App. 3d 1021, 1033, 513 N.E.2d 429, 437.) Factors the sentencing judge may consider are defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. (*Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884.) But the primary factors in sentencing are the gravity of the offense and the circumstances surrounding its commission. (*Hall*, 159 Ill. App. 3d at 1031, 513 N.E.2d at 436.) Prior to sentencing the trial court stated it had carefully gone through all the factors in aggravation and mitigation. The record clearly shows the trial court considered mitigating factors.

In support of his request, defendant states he was a 26-year-old high school graduate at the time he was sentenced. He was one of nine siblings raised by his mother in impoverished circumstances. During sentencing, he expressed remorse and apologized to the

victim's mother and to his own mother for the suffering he had caused. Defendant also characterizes the arguments as initiated by Broughton.

Broughton was trying to get defendant to pay for the windshield he broke. When defendant left Broughton in the parking lot and reappeared on the second-floor balcony, defendant elected to reinitiate the argument. Defendant, moreover, made the decision to reinitiate the argument with a rifle in his hand. In front of mutual friends, defendant aimed at Broughton and shot him, then immediately left the scene. There is no evidence defendant showed any remorse right after the shooting. Although he claims the shooting was justified, he fled to another jurisdiction. Defendant's first sign of remorse appears only after being extradited, going through a full trial, and being found guilty of first degree murder. Although the trial court found defendant's testimony incredible, defendant during his apology continued saying that Broughton and four other men meant him bodily harm while defendant was standing on the second-floor balcony with a rifle.

As to defendant's economic stress and upbringing in an impoverished family, just as they do not justify killing another person to get out of paying for a windshield, they do not entitle defendant to a new sentencing hearing. All penalties should be determined according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. (Ill. Const. 1970, art. I, § 11.) This does not mean that rehabilitation of the offender should be accorded greater weight than the seriousness of the offense during sentencing. (*People v. Williams* (1992), 228 Ill. App. 3d 981, 1012, 593 N.E.2d 968, 988.) Here, the trial court gave defendant a sentence 20 years less than the maximum allowed by statute. We do not find that the trial court abused its discretion in sentencing defendant to 40 years' imprisonment for first degree murder. Accordingly, the sentence imposed by the trial court is affirmed.

For the reasons stated above, the conviction and sentence are affirmed.

Affirmed.

TULLY and CERDA, JJ., concur.