THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LOYETTIE LOUISE FULLER, Defendant-Appellant.

Third District   No. 3—87—0704

Opinion filed February 2, 1989.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellant.

James T. Teros, State's Attorney, of Rock Island (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant, Loyettie Fuller, was charged with the January 1987, theft of $400 from one Hazel Millbrook. She was tried by a jury and found guilty of the felony offense as charged (Ill. Rev. Stat. 1987, ch. 38, par. 16—1(a)). Defendant was sentenced by the circuit court of Rock Island County to serve seven years in the Department of Corrections. In this appeal, defendant contends that the State's evidence was insufficient to prove her guilt beyond a reasonable doubt. For reasons that follow, we affirm.

The evidence admitted at trial established that defendant became a friend of Joyce Millbrook, the victim's daughter, while defendant and Joyce were incarcerated at the Lee County jail. Defendant and Joyce struck an agreement by which the one who was released from jail first would try to raise bond money for the release of the other. Defendant, known to Joyce as "Debbie," was released around January 3, 1987. She borrowed a car from her friend, Karen Chrisco, and drove to Rock Island with defendant's sister, Frances Abner, that night to try to raise money toward the $1,000 needed to bond out Joyce.

Defendant arrived in Rock Island after midnight and telephoned Hazel. She identified herself as "Debbie" and explained her mission. Hazel provided directions to her home and, upon the arrival of defendant and her sister, gave defendant $400 on the condition that if defendant failed to get Joyce out on bond, Hazel needed the money back for rent and bills. Defendant testified that she then proceeded to Davenport, where she sold or left as collateral one or two televisions, a computer and a "jambox" in exchange for $300 to be applied toward Joyce's bond. Defendant telephoned Joyce from Rock Island to report her progress and then returned the car to Chrisco by 3 p.m. so that she could use it to go to work.

Later, defendant visited the Lee County jail and left a message for Joyce explaining that she was still $170 short and would return a couple of days later, on Monday. According to Joyce, she talked with

her mother on Monday and learned that defendant had not talked with Hazel since she turned over the $400. It appears that later that day Joyce was sentenced to a term of imprisonment in the Department of Corrections. She was never released on bond.

Shortly after speaking with Joyce, Hazel traveled to Lee County to find defendant and ask for the return of her $400. She went to the address given to her by the sheriff's office. Frances answered the door and told Hazel that defendant had just left to go to the jail with the money. According to defendant and Frances, the two again borrowed Chrisco's car and returned to Rock Island a few days to two weeks after Hazel had visited Lee County, intending to give Hazel her money back. Although their accounts of the details varied to some degree, the gist of their testimony is that they reached Hazel's house in the evening and were met on the porch by a gentleman who told them that he was Hazel's boyfriend. The man allegedly told them that Hazel was not at home—she was at a church meeting. The women handed the man $400 to give to Hazel and hurried home, ostensibly to get Chrisco's car back to her in time for her or her husband to go to work. Frances also testified that she had to be at work at the Package Sanitation Services, Inc. (PSSI), plant in Rochelle the following morning at 6 a.m. Defendant testified that she did not know that Hazel had not in fact received her money until defendant was arrested about six weeks later.

Evidence was adduced at trial that conflicted with defendant's theory of innocence on several points. Hazel and Joyce testified that Hazel did not have a boyfriend or other male adult at her home and Hazel denied going out in the evening during the period in question for church meetings or any other reason. Karen Chrisco testified that defendant and Frances borrowed her car to go to Rock Island on only one occasion—around January 3, 1987. Shirley Swanson, bookkeeper for PSSI, testified for the State in rebuttal that Frances Abner had not worked at PSSI since February 20, 1986. In addition, documentary evidence was admitted of defendant's prior convictions for forgery, deceptive practice and retail theft; Frances Abner's convictions for deceptive practices and retail theft; and Joyce Millbrook's conviction for theft.

■ To sustain the charge in this case, the State was required to prove beyond a reasonable doubt that defendant knowingly obtained or exerted unauthorized control or knowingly by deception obtained control over Hazel Millbrook's $400 with the intent to permanently deprive her of the use and benefit of the money. (Ill. Rev. Stat. 1987, ch. 38, pars. 16—1(a), (b).) Defendant challenges the sufficiency of the

State's evidence of both the intent and the "unauthorized control" elements of the offense.

■■ Defendant first contends that the State was required to prove that she did not intend to use the money to post bond for Joyce. Defendant's point in this regard is not well-taken. By statutory definition, theft is not limited to the original taking of property, but includes subsequent conduct evincing the exerting of unauthorized control with the intent to permanently deprive the owner of her property. (*People v. Alexander* (1982), 93 Ill. 2d 73, 442 N.E.2d 887.) Clearly, defendant was not authorized to retain, spend or abandon the $400 or use it for any purpose other than for Joyce's bond. That limited authorization evaporated when Hazel went to Lee County and demanded her money.

■■ Although the evidence of defendant's nonfelonious intent prior to Joyce's removal to the Department of Corrections was substantially corroborated, the circumstances thereafter raised a question of fact as to defendant's intent. It is well settled that it is the prerogative of the jury to believe or disbelieve a defendant's testimony of nonfelonious intent. (*People v. Campbell* (1975), 28 Ill. App. 3d 480, 328 N.E.2d 608.) It is not the function of a reviewing court to reweigh the evidence or retry the defendant, but to determine, after viewing all of the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.

■■ ■ In this case, defendant's evidence of good intentions to return the money once it became clear that the she was not going to use it for bond was highly impeached. The jury was not required to believe that defendant and her sister went to Rock Island on more than one occasion. The jury could reasonably have found that the two women went to Rock Island only to obtain the money. Discounting as incredible defendant's evidence of good intention to return the money, the jury was left with proof that after Joyce was sentenced to the Department of Corrections, the money was never returned to Hazel despite her specific instructions. Under the circumstances, the evidence gives rise to a reasonable inference of *mens rea* sufficient to support the jury's determination that defendant knowingly exerted unauthorized control over Hazel's money with the requisite intent to permanently deprive her of it. See *People v. Garrahey* (1943), 385 Ill. 45, 47, 52 N.E.2d 132, 133 (stating the rule for cases of "larceny as bailee" that "where the owner parts with possession but not with the

title, expecting the property shall be returned, such property may, under [appropriate] circumstances, be feloniously converted by the bailee").

In sum, having considered the evidence of record and defendant's arguments on appeal under the appropriate standard of review, we conclude that the State's evidence was not so unsatisfactory as to raise a serious doubt of defendant's guilt. The judgment of the circuit court is, therefore, affirmed.

Affirmed.

WOMBACHER and SCOTT, JJ., concur.